[No. 10881.   Department One.   February 28, 1913.]

CITY RETAIL LUMBER COMPANY, *Respondent,* v. TITLE
GUARANTY AND SURETY COMPANY, *Appellant.*[1]

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ACTION ON
BOND TO SECURE PERFORMANCE. No recovery can be had by a material-
man on a contractor's bond given for the security of laborers and
materialmen on public work, under Rem. & Bal. Code, § 1159, for
ties sold to a contractor on street grading work, where the ties
were used for a track to move dirt on three other contracts held by
the contractor and not secured by the bond, and the ties were not
entirely consumed in the work.

Appeal from a judgment of the superior court for Chehalis
county, Irwin, J., entered May 9, 1912, upon findings in
favor of the plaintiff, in an action upon a contractor's bond.
Modified.

*Frank Beam* (*Murphy & Wall,* of counsel), for appellant.
*Hogan & Graham,* for respondent.

PARKER, J.—The plaintiff seeks recovery from the defend-
ant upon a bond, executed by it as surety for William Dutch-
er to the city of Aberdeen, under Rem. & Bal. Code, § 1159,
to secure performance on his part of a street improvement

[1]Reported in 130 Pac. 345.

contract which he had theretofore entered into with the city, which bond was also conditioned as follows:

"Now, therefore, if the above bounden principal, William Dutcher, . . . shall pay . . . all persons who shall supply such contractor . . with provisions and supplies for the carrying on of the work contemplated in said contract . . . then this obligation to be void, otherwise to be and remain in full force and effect."

The cause proceeded to trial before the court without a jury, resulting in findings and judgment in favor of the plaintiff, from which the defendant has appealed.

A careful reading of the entire record, which includes all of the evidence introduced upon the trial, convinces us that there is practically no room for controversy as to the controlling facts here involved, which may be summarized as follows: In July, 1910, the city of Aberdeen entered into contract with Dutcher for the improvement of portions of Spur, Tenth, and Broadway streets, by grading and constructing wooden sidewalks, curbs, and gutters thereon. Immediately upon the entering into of this contract, appellant, as surety for Dutcher, executed to the city the usual statutory bond, conditioned in the language above quoted, as required by Rem. & Bal. Code, § 1159. Thereafter respondent sold and delivered to Dutcher lumber amounting in value to $681.33. This lumber was so furnished with the understanding upon the part of both respondent and Dutcher, that it was to be used in connection with the construction of the improvement as follows: $390.79 worth of the lumber was furnished for and used in the construction of the sidewalks, curbs and gutters of the improvement, and actually went into and became a part thereof; $290.54 worth of the lumber consisted of railway ties, which were furnished for and used in the construction of a temporary narrow gauge railway, over which dump cars were run for the removal of surplus dirt from the portions of the street being improved. The trial court found, among other things:

"That while said 'ties' did not actually go into the streets themselves so as to actually form a part of the improvement, yet the use of said 'ties' for the construction of the dump-car line above mentioned practically consumed the lumber comprising the 'ties' so that after the use of the lumber for 'ties,' as above mentioned, the lumber would have little or no value."

We cannot agree with this finding, if it have reference to the consumption of the ties in the construction of the particular improvement for which appellant executed the bond here sued upon, and we think that the question of the consumption of the ties in this improvement and the furnishing of them with a view that they were to be consumed therein becomes of vital importance here in determining appellant's liability upon its bond to pay for the ties. Mr. Davenport, respondent's manager, and its only witness upon the trial, testified as follows:

"Q. On July 30th, 1910, there were 1121 pieces 4x8 ties sold. Do you know what they were supposed to be used for? A. They were gotten to build a railroad to 10th, Broadway, and Spur. Q. Do you know whether or not those ties were used up in doing that work or were used for other purposes after that? A. I could not say. I presume they were used afterwards; I don't know . . . Q. Do you know whether or not there was an improvement at the other end of the line, the lower end? A. I think there was. Q. What was that improvement? A. I think that was 1st street. Q. So they made the track to extend from Spur & Broadway down to 1st? A. Yes. Q. That was a public improvement on 1st street? A. Yes. Q. Mr. Dutcher was doing both contracts? A. Yes."

This is the substance of all the information he gives us as to the purpose for which the ties were furnished and as to the use they were actually put to. Dutcher, the contractor to whom the ties were furnished, testified as follows:

"Q. Where were these ties used? A. On Spur, Broadway and 10th to run away the surplus dirt. Q. Were they used any place else? A. A few I guess were used on 11th. Q. How many contracts did you have at this time with the city of

Aberdeen? A. I had four. Q. Did you use these same ties on all four contracts? A. I think I did. I used them with some old ones I had before I got these. Q. Did you put the old ones down first or later? A. Later; I used the new ones first and the old ones afterwards. Q. And these ties were used on the 1st street improvement as well? A. Some of them were. Q. All of them? A. No, we used most of the old ones on 1st street. Q. At the time you were taking down Spur you were filling in 1st with the dirt? A. Yes. Q. So that the cars were worked over 1st as well as Spur street? A. I suppose you might call it that way. Q. Did you make use of these ties on 11th street? A. I don't think we did. Q. You did not haul any cars from 11th street over this railroad? A. Yes, but we did not use those; we had some old planks. Q. The dirt hauled from 11th street all went over this track, over these ties? A. Yes. Q. And you had the E street contract at this time? A. Yes. Q. State whether the dirt that went into E street went over this track. A. It did. Q. Which was the largest contract of these four? A. 1st street. Q. 1st street had more yards of dirt? A. Yes. Q. Which was the smallest yardage as far as it went over this track? A. E street was the smallest. Q. And was Spur next? A. I cannot remember whether Spur was larger than 11th or whether 11th was the largest. Q. But this track was used for all four jobs? A. Yes, to run the dirt from the hill down. Q. Were these ties used up? A. They were laying where I laid them with the rails on the last I seen them. Q. Do you know what became of these ties? A. I don't know of my own knowledge; hearsay is all I know about that. Q. Did they become part of this work; that is, are they still up there in the work? A. They are not where I left them, I know that. Q. You think the ties were good when you quit there, were they? A. Of course they were second hand material. I don't know what they were good for; they might be used again. Q. In your idea they were good enough to run a track over? A. Yes. Q. You don't know what became of them? A. No, not of my own knowledge I don't."

This testimony is uncontradicted. Dutcher became insolvent about the time these contracts were completed, leaving, among other debts unpaid, that which was incurred in the purchase of the ties and the other lumber mentioned. The

ties were thereafter sold by Dutcher's trustee in bankruptcy for $12. Thus we think it is established that the ties were actually used by Dutcher in the prosecution of three other contracts, at least one of which was a larger contract than the one for which appellant executed this bond, and thereafter the ties proved to be still of some value, even at a bankrupt sale. We also think that it is a fair conclusion from the entire evidence that respondent's manager knew, at the time he furnished the ties, that they would not necessarily be consumed in making this particular improvement, though they were furnished with a view to being used thereon.

Counsel for respondent rest their contention as to appellant's liability for the debt incurred by Dutcher in the purchase of these ties principally upon our decision in *National Surety Co. v. Bratnober Lum. Co.*, 67 Wash. 601, 122 Pac. 337. In that decision we reviewed at considerable length the law upon this subject, noticing the distinction between the provisions of Rem. & Bal. Code, § 1159, and the general lien statute, holding that certain items are recoverable upon bonds given under this section which would not be recoverable under the general lien statute. Relying upon the broader language of this section and our view of it as expressed in that decision, counsel for respondent insist that these ties constituted an item recoverable upon the contractor's bond, given for the purpose of protecting persons supplying the contractor with provisions and supplies. A careful reading of that decision, however, will show that it involves, (1) fuel for steam shovel, (2) the service of teams with drivers, and (3) feed for horses, all furnished for the carrying on of the work in question, and all necessarily entirely consumed in the prosecution of the work. The fuel, service, and feed, in a sense, did enter into and become a part of the finished structure, possibly not a physical part of it in the sense that material actually going into the structure would, but in the sense that labor performed upon the structure would. In the recent case of *Standard Boiler Works v. National Surety Co.*, 71 Wash. 28,

127 Pac. 573, we held that the expense of making repairs upon a steam shovel which was used in prosecuting public work was not secured by the contractor's bond given under this section, upon the theory that such repairs were not work going into and becoming a part of the finished structure, because they were not necessarily all consumed therein, but became a part of the machinery or equipment which the contractor is presumed to be provided with for the purpose of carrying on his work. The evidence in this case clearly shows, as we have noticed, that these ties were in like manner a part of the equipment of the contractor, and not only were not such material as was consumed in the prosecution of the work, but plainly were such material and furnished under such circumstances as to show that it was not contemplated by the parties that they would be consumed in the prosecution of the work. We are unable to see that these ties performed any office different in principle from that performed by any other tool or appliance used in the prosecution of the work, though they may have been of such nature as to become very materially lessened in value in the prosecution of the work. It may be well doubted whether a tool or appliance which becomes entirely worn out in a particular contract of this nature would come within the protection of a bond given under § 1159, though we need not express our opinion upon that question at this time.

The judgment of the trial court is reversed in so far as it awards recovery against appellant for the $290.54 incurred in the purchase of the ties, and it is directed that the judgment be corrected accordingly.

CROW, C. J., CHADWICK, GOSE. and MOUNT, JJ., concur.