NYE-SCHNEIDER-FOWLER COMPANY, APPELLANT, V. BRIDGES, HOYE & COMPANY, APPELLEE; LION BONDING & SURETY COMPANY, APPELLANT.[*]

FILED MARCH 13, 1915.   No. 18890.

1. **Appeal:** CASE STATED. These cases are presented in a "case stated" under rule 14 (94 Neb. XIII), and were, at the request of the parties, advanced for hearing as that rule provides. This practice facilitates the work of the court, and saves time and expense for litigants

---

[*]Modified so as to allow attorney's fees. See opinion, p. ——, *post.*

2. **Insurance:** ACTION: COSTS: ATTORNEY'S FEES. Chapter 234, LAWS 1913, providing for attorney's fees in actions of this kind, has no application to contracts entered into before that act took effect.

3. **Schools and School Districts:** BUILDING CONTRACT: BOND: LIABILITY OF SURETY. Chapter 28, Laws 1889, secured payment of mechanics' and laborers' wages "for labor that shall be performed in the erecting, furnishing or repairing of the building, or in performing the contract," with the public authorities. It must be construed to protect a subcontractor and laborers employed by him, as did the general mechanic's lien law then in force. The surety on the contractor's bond was liable for all labor necessarily employed in performing the contract. *Des Moines Bridge & Iron Works v. Marxen & Rokahr*, 87 Neb. 684, followed. *Fidelity & Deposit Co. v. Parkinson*, 68 Neb. 319, distinguished.

4. ———: ———: ———: ———: MATERIALMEN. The act of 1913 (Laws 1913, ch. 170) for the first time extended like security to materialmen. The contracts in these cases were entered into before that act took effect, and as to materials furnished the bond must be considered a common-law contract.

5. ———: ———: ———: ———. The undertaking in the bond to guarantee "all liability of the first party for all bills for work, labor and materials to be incurred in connection with the contract herein referred to," and that he "shall promptly pay, all bills for work, labor and materials performed or furnished in and about said work," must be construed to include all labor and materials involved in the work specified in the contract; that is, that enter into the structure or are consumed in and about the work, but not for tools and appliances which are the property of the contractors and may be used from time to time in other works and upon other contracts, and which are not consumed in the work or which do not go as a part of the building or improvement and necessarily enter therein. The use of an engine for hoisting materials, the repairs on such engine, and oil and fuel used in operating the same are not guaranteed by the surety. Lumber for concrete forms, if consumed in constructing the building, and a small proportion of sacks, of little comparative value, in which the cement for such concrete was sold, without proof that it was practicable, and contemplated by the parties, that all sacks would be returned to the materialman, are allowed to be recovered for in these cases.

APPEAL from the district court for Dodge county: GEORGE H. THOMAS, JUDGE. *Affirmed on condition.*

*Courtright, Sidner & Lee,* for plaintiffs.

*Sullivan & Rait* and *George B. Thummel, contra.*

SEDGWICK, J.

The attorneys for the parties in this case have made good use of rule 14 (94 Neb. XIII) of this court. By so doing they have saved themselves and the court much labor and their clients much expense. It appears that there were pending in the district court for Dodge county four several cases, all involving the same legal questions. These questions were determined by the district court in each of the four cases, and thereupon the counsel representing the respective parties entered into a stipulation under rule 14, which provides for a case stated. The case stated begins with these words: "In the District and Supreme Courts of the state of Nebraska. First Case: Nye-Schneider-Fowler Co., plaintiff, Appellant and Appellee, v. Bridges, Hoye & Co., Defendant and Appellee; Lion Bonding & Surety Co., Defendant, Appellant and Appellee." Then follows the title of each of the other three cases, and the statement proceeds as follows: "Stipulation for Consolidation, Joint Appeal and 'Case Stated' under Supreme Court Rule No. 14. Come now the parties to the four actions above mentioned, and both plaintiffs and the surety company, defendant, intending to appeal to the supreme court, do hereby stipulate as follows: 1. The first and second cases were commenced in the district court for Dodge county, and the third and fourth cases were commenced in a justice court, and by agreement stipulated to said district court for trial. Issues were properly joined in all four of said cases so as to properly present for adjudication the matters now in dispute and to be determined by the supreme court, and said matters were adjudicated by the district court. 2. This stipulation contains a fair abstract or statement of the essential questions, of the pleadings, findings and rulings of the court, exceptions, and of the facts in all of said four cases; and this stipulation when signed and approved by the trial judge and filed with the clerk of the district court and then certified to the supreme court, together with a transcript of the final judg-

ments in said actions, shall constitute a complete 'case stated' under rule fourteen of the supreme court. Said four actions shall be docketed and determined as one case in the supreme court." Then follows so much of the pleadings and agreed facts in the case as are necessary for presentation of the questions of law relied on by the respective parties, and an agreed statement of the law questions involved and controverted. In each case there is also a transcript of the record containing the final judgment.

It appears from the case stated that a school district of Dodge county entered into a contract for the erection of a high school building in Fremont. The contractor agreed "to furnish the work and material and to clear and level the grounds." The contractor entered into a bond with the Lion Bonding & Surety Company as surety, in which the contractor and the bonding company are "held and firmly bound unto the school district of Fremont, in the county of Dodge, in the state of Nebraska, second party, for all liability of the first party for all bills for work, labor and materials to be incurred in connection with the contract." The suits were prosecuted upon the bond. The plaintiffs asked that attorney's fees be taxed in their favor, which the court refused. The defendants contend that the court allowed items of recovery which are not properly allowed in such actions. These are the two questions presented.

1. Should the court have taxed the attorney's fees as costs in the case? Section 1, ch. 234, Laws 1913, provides for such fees. It appears to be conceded that the bond upon which these actions are brought is, as between the school district and the contractor, within the terms of this statute. The bonding company contends that this statute has no application to bonds entered into before the statute took effect, and in this we think that the bonding company is correct. The statute of 1873 provided for the allowance and recovery of attorney's fees in certain actions. This statute was repealed in 1879. In *White v. Rourke*, 11 Neb. 519, it was held that "the repeal did not affect contracts entered into prior to" the repeal, and in *Bond v.*

*Dolby,* 17 Neb. 491, it was held that an attorney's fee was properly allowed upon the foreclosure of a mortgage which provided for such attorney's fee and was executed before the repealing act of 1879 took effect. The act of 1913 is quite analogous to the act of 1873, and by those decisions the allowance of attorney's fees under the statute depends upon the existence of the statute at the time of entering into the contract. It seems clear that the legislature by the act of 1913 did not intend to impair the obligations of existing contracts.

2. It appears from the case stated that the decree of the court included various items of credit for lumber and material, some of which the defendant contends were improperly allowed. The nature of these items, so far as is necessary to an understanding of the controversy, will be stated in connection with the discussion thereof. In *Fidelity & Deposit Co. v. Parkinson,* 68 Neb. 319, the petition of the plaintiff alleged that he furnished to the defendant, "for the construction of said building, material and labor to the amount and value of $921.78," and alleged that there was a balance due the plaintiff "for the work and labor so furnished." The judgment of the court was for $127.70 "for material and labor furnished by the plaintiff." The statute, as it existed then, did not include materialmen, and because the judgment was for both material and labor, instead of being for labor exclusively, it was reversed. The reversal is expressly put upon that ground. In the syllabus, however, it is said: "It is doubtful if the subcontractor who furnishes work and material in the construction of such building is within the terms of the statute." And in the opinion, after quoting from New York cases, it is said: "These cases, with which we are inclined to agree, seem to imply that a statute like the one under consideration is intended for the protection of the laborer who does the manual labor on the building, and not for the contractor who furnishes both labor and material in the construction of the work embraced within the contract." But it is expressly said that the court does not pass upon that question, both because it was not argued

on the submission of the case, and because the case "will
have to be reversed for the reason that the judgment was
given for labor and material, while the suit was brought
for labor alone." The doubt in the opinion as to whether
a contractor who furnishes labor in the construction of
the work is entitled to a lien is derived from the opinion
of the court of appeals of New York in *McCluskey v. Crom-
well*, 11 N. Y. 593; but upon examination of that case it
will be found that it does not justify such doubt. In that
case the contract of sureties, which follows substantially
the language of their statute, guaranteed that the con-
tractor "shall and do well and truly pay or cause to be
paid in full the wages stipulated and agreed to be paid
to each and every laborer employed by him or his agent
or agents, in the construction of the work." The court
held that the subcontractor and the laborers employed by
the subcontractor were not employed by the contractor
himself, and therefore were not within the terms of the
contract and the bond. This proposition is reasoned ex-
tensively by the court, and in conclusion the court said:
"The courts can neither usurp the functions of the legis-
lature, by doing or assuming as done what they may think
should have been done in the way of legislation, or take
the place of contracting parties, and vary the terms of
their agreements to meet any supposed equities."

The statute in force when the contracts in the cases
at bar were made was enacted in 1889. Laws 1889, ch. 28.
The act is entitled "An act to secure the payment of me-
chanics' and laborers' wages on all public buildings where
the provisions of the general mechanics' lien laws do not
apply." It requires the public officers to take from the
contractor a bond "conditioned for the payment of all la-
borers and mechanics for labor that shall be performed in
the erecting, furnishing or repairing of the building, *or in
performing the contract*." When this statute was enacted
the general mechanics' lien law provided: "Any person
or subcontractor who shall perform any labor for or fur-
nish any material or machinery or fixtures for any of the
purposes mentioned in the first section of this act, to the

contractor or any subcontractor, who shall desire to secure a lien upon any of the structures mentioned in said section, may file a sworn statement, * * * and, if the contractor does not pay such person or subcontractor for the same, such subcontractor or person shall have a lien for the amount due for such labor or material, machinery and fixtures." Comp. St. 1881, ch. 54, sec. 2. This statute gave the subcontractor and the laborers employed by him a lien for the material furnished and labor performed, and it seems clear that the statute now under consideration intended to furnish laborers with equivalent security for labor performed on public buildings where no lien was allowed. It expressly guaranteed compensation for labor "performed in the erecting, furnishing or repairing the building, or in performing the contract." To give the proper force and effect to the words "or in performing the contract," they must be construed to include all labor required to perform the contract with the proper authorities.

In *Des Moines Bridge & Iron Works v. Marxen & Rokahr*, 87 Neb. 684, it is held that, when the contractor has "agreed to furnish the material, machinery, appliances and labor necessary for the construction of, and construct, equip and fully build, a courthouse," and the bond of the surety is conditioned "that if the said Marxen & Rokahr shall well and truly keep and perform all the conditions of this contract on their part to be kept and performed, and shall indemnify and make payment and save the said Seward county harmless as therein stipulated, then this obligation shall be of no effect," the bond is a common-law contract, and the surety assumes "an obligation to pay the subcontractors and materialmen, as well as the laborers and mechanics engaged in constructing the courthouse referred to." That case recognizes a conflict in the authorities, citing some of them, and bases the conclusion upon our own decisions, some of which are also cited with approval, and others distinguished.

The act of 1913 (Laws 1913, ch. 170; Rev. St. 1913, sec. 3840) for the first time extended like security to material-

98Neb.3

men. We conclude, then, that in these actions the surety company was by virtue of the statute liable for all labor necessarily employed in performing the contract entered into with the public authorities. These contracts were entered into before the act of 1913 took effect, and, as to the material furnished, the bond is exclusively a common-law contract, and is to be construed as such, The condition in this bond is that the company is bound "for all liability of the first party for all bills for work, labor and materials to be incurred in connection with the contract herein referred to." The liability of the surety is also stated in this contract in the following words: "Shall promptly pay all bills for work, labor and materials performed or furnished in and about said work." This contract covers labor performed, and, as we have said, is not regarded as in conflict with the statutes.

Plaintiff's counsel insists that the words "in connection with the contract" must be construed to protect "all parties becoming creditors of the contractor." Of course, he means creditors "in connection with the contract," but he does not state any plain rule by which it can be determined with certainty what creditors must be considered as having become such in connection with the contract with the school district. The necessity of such a plain distinction is obvious. If the contractor whose business was to take such contracts from time to time should, while engaged in this particular work, purchase wagons with which to deliver his materials, with the expectation of using them similarly in other work for years afterwards, the bill for such wagons might in some sense, perhaps, be said to be in connection with this contract, but surely not within the contemplation of the parties. What, then, might be reasonably contemplated by the parties from a fair construction of the language used? The surety guarantees that the contractor will pay for all work and labor performed and for all material furnished "in and about said work." This is the last expression of that matter in the contract, and it is agreed that if this is complied with the bond shall be void. The "work" is the construction of the building

and removal of the debris. The labor and materials involved in that "work" were evidently what was contemplated by the parties to the contract. If the contractor bought his materials in Chicago and paid the freight charges thereon to Fremont, the cost to him of the materials at Fremont would include the freight charges, and likewise, if he paid drayage to the building site, the cost of the materials that went into the building would include drayage also. Labor and materials that enter into the structure or are consumed in or about the work may be recovered for in such action, but not "for tools and appliances which are the property of the contractors and may be used from time to time in other works and upon other contracts, and which are not consumed in the work or which do not go as a part of the building or improvement and necessarily enter therein." *Ninneman v. City of Lewiston,* 23 Idaho, 169. Such tools and appliances would, of course, include machinery and rope used for hoisting, and, as the use of such tools and machinery cannot be recovered for, neither can repairs or oil or fuel used in operating such machinery. Lumber for concrete forms, if consumed in constructing the building, would constitute material used.

In these cases such lumber to the value of $6,874.65 was used and consumed, except the comparatively insignificant amount of $70. The court allowed for the full value of the lumber so used which had not been paid for, making no reduction for the $70 which was realized by the contractor and was not consumed in the work. This item was so small in comparison with the whole amount of lumber furnished that it may be said that the lumber furnished was practically consumed in the work. And, for the same reason, the court was right in not deducting 10 cents for each cement sack. The case stated shows that cement was furnished in sacks, and that by agreement the contractor was to be allowed 10 cents for each sack returned. There were 279 sacks not returned. There is no presumption that it is practicable to return all the sacks in which the cement is furnished, and, as this mate-

rial could not be furnished without the sacks, they are practically a part of the material furnished and consumed in the work.

The judgment in the case of the Nye-Schneider-Fowler Company included an item of $44.05 for coal used in running the hoisting engine. This was erroneous, and that judgment will be reversed, unless the plaintiff files in this court a remittitur in that amount within 30 days. If such remittitur is filed, the judgment will be affirmed. A similar item of $12.70 was allowed in the judgment of Hotchkiss et al., and the same order will be entered. In the judgment of Thomas & Courtright Hardware Company was improperly included $26.36 and $17.55 for articles used by the contractor, but which were not consumed and did not enter into the structure. The same order, therefore, will be entered as to those items. The judgment of Orvis Clark was wholly for drayage properly included. That judgment is therefore affirmed, with costs. In the other three cases, the costs in this court will be taxed to the party incurring the same.

JUDGMENT ACCORDINGLY.

LETTON, FAWCETT and HAMER, JJ., not sitting.