[No. 12339. Department Two. June 26, 1915.]

UNITED STATES RUBBER COMPANY OF CALIFORNIA, *Appellant,*

v. AMERICAN BONDING COMPANY OF BALTIMORE,

*Respondent,* WASHINGTON ENGINEERING

COMPANY, *Defendant.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—BONDS—CONDITIONS—"SUPPLIES." A bond given by a contractor to secure payment of materials furnished, and of all persons who shall supply the contractor with provisions and "supplies" for the carrying on of the work, in compliance with Rem. & Bal. Code, § 1159, does not cover a sum due for rubber goods, consisting of hose, washers, couplings, belts, tubing, gloves, boots, and overcoats which were entirely worn out in the construction of a steel bridge; since the goods were in the nature of "equipment" and neither "materials" nor "supplies" within the meaning of the act.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered April 29, 1914, upon sustaining a demurrer to the complaint, dismissing an action upon an indemnity bond. Affirmed.

*Bronson & Robinson* and *H. B. Jones,* for appellant.

*Hayden, Langhorne & Metzger,* for respondent.

[1]Reported in 149 Pac. 706.

FULLERTON, J.—In July, 1911, the city of Tacoma entered into a contract with the Washington Engineering Company, by the terms of which the engineering company undertook to erect for the use of the public a vertical lift steel bridge across the Puyallup river. As required by § 1159 of Rem. & Bal. Code (P. C. 309 § 93), the city took from the contractor a bond, with the American Bonding Company of Baltimore, as surety, conditioned that the contractor should "pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions or supplies for the carrying on of such work."

During the progress of the work, the United States Rubber Company furnished the contractor with certain rubber goods, consisting of hose, washers, couplings, spanners, belts, tubing, packing, gloves, boots, overcoats, and perhaps goods of other descriptions, the whole having a value of $1,094.80. The contract was of considerable magnitude, requiring some time for its completion, and the goods so furnished were entirely worn out by use during the progress of the work. The goods were not paid for by the contractor, and the rubber company filed with the proper authorities of the city of Tacoma a notice of its claim of lien against the bond for the value of the goods. The claim was disputed by the surety, and the present action was begun by the vendor of the goods against the contractor and surety to recover thereon. To a complaint embodying the foregoing facts, a demurrer was interposed by the surety, which the trial court sustained. This is an appeal from a judgment of dismissal entered after the plaintiff had refused to plead further.

The sole question before us therefore is, do the articles described fall within the description of articles secured by the conditions of the bond; or, in other words, are they materials, provisions or supplies, within the meaning of either of these terms as used in the statute. Seemingly, on first impression, the statute is broad enough to include anything that might be

furnished the contractor useful or necessary in carrying on the contractual work, but the courts do not generally so hold. It is generally held, and we have heretofore held, that the security of the bond does not cover the cost of the contractor's working equipment; as the "contract presupposes that the contractor has and will furnish upon his own account the necessary tools, implements and appliances with which to perform the work." *Standard Boiler Works v. National Surety Co.,* 71 Wash. 28, 127 Pac. 573, 43 L. R. A. (N. S.) 162. To determine, then, whether a given article furnished the contractor is or is not within the terms of the bond, it is necessary to distinguish between materials, provisions and supplies on the one side, and the contractor's working equipment on the other.

To distinguish between materials and equipment is comparatively easy, since the term materials, as we have defined the term in *Gate City Lumber Co. v. Montesano,* 60 Wash. 586, 111 Pac. 799, includes such articles only as enter into and form a part of the finished structure, or, it may be, such articles as are capable of being so used and are furnished for that purpose, while equipment is, what the word imports, the outfit necessary to enable the contractor to perform the agreed service; the tools, implements and appliances which might have been previously used or might be subsequently used by the contractor in carrying on other work of like character. *Standard Boiler Works v. National Surety Co., supra.*

To distinguish between provisions and equipment, also, has not caused much difficulty, since the courts have usually given the word provisions its ordinary meaning. But in distinguishing between supplies and equipment, the courts have not been so fortunate, and seemingly the cases, including our own, are not entirely consistent. In harmony with the definition of the term equipment heretofore given, we held in *Standard Boiler Works v. National Surety Co., supra,* that the cost of repairs made to a steam shovel, hired by a contractor and used by him in performing the contractual work, was not re-

coverable against the bondsmen as a supply, but held, on the contrary, that the steam shovel was a part of the contractor's equipment, and that an indebtedness incurred for labor thereon in the nature of repairs was not different from an indebtedness incurred in the purchase of the machine, or for labor in its original construction; and in *City Retail Lumber Co. v. Title Guaranty & Surety Co.*, 72 Wash. 300, 130 Pac. 345, we held that an indebtedness for ties furnished a contractor and used by him for laying a temporary railway track for use in carrying on a street grading contract was not recoverable as an indebtedness for supplies furnished the contractor. Illustrative of the other side of the proposition, we held in *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337, that coal furnished a contractor for use as fuel in the operation of a steam shovel on a public work was a supply within the meaning of that term as used in the statute. In this case a supply was defined as being any article entirely consumed by its use in the work, and the definition has been repeated in other cases. It seemed to us, however, on further consideration, that the definition is not strictly accurate. Aside from the fact that it conflicts with the definition given to the word equipment in the case of *Standard Boiler Works v. National Surety Co.*, heretofore noticed, it is in itself hardly consistent, if by the term "consumed" is meant "entirely worn out or destroyed by use," as it would make the question of liability under the bond turn on the degree of use made of the article rather than on the nature of the article itself. To illustrate: under this definition, picks, shovels, scrapers and like articles furnished a person having a contract to construct or repair a public highway would be supplies when entirely consumed by use in the prosecution of the work, and equipment when only ninety-nine or some less per cent consumed. Such a distinction could hardly have been within the intent of the legislature, and we think it was meant to make the distinction rest on the effect the use has upon the article, rather than upon the de-

gree of use to which it is subjected. So construing the statute, the definitions of equipment and supply coincide, and a certain and natural dividing line is found between them. A supply would be any article furnished for carrying on the work which from its nature is necessarily consumed by use in the work, while equipment would consist of those articles that are not necessarily so consumed, but which may survive the particular work and be further used on work of like character. In this view, also, the question actually decided in the case of *National Surety Co. v. Bratnober Lumber Co.* harmonizes with the other cases cited, since coal, like powder and other explosives, and like electricity used for power, and other forms of energy used for the same purpose, is necessarily consumed by its use, and cannot survive for like uses in a similar character of work.

Tested by these rules, it is plain that the articles furnished by the appellant are not supplies, but are a part of the contractor's equipment. While they were actually worn out by use in carrying on the work, they were not articles of such a nature as to be necessarily consumed by such use, and might have survived, had their use therein been of less duration, for use in subsequent work of like character.

But the appellant cites, as supporting its contention, the case of *Hurley-Mason Co. v. American Bonding Co.*, 79 Wash. 564, 140 Pac. 575, to which may be added the more recent case of *National Lumber & Box Co. v. Title Guaranty & Surety Co.*, 85 Wash. 660, 149 Pac. 16, which hold that the rental value of machinery hired by the contractor for use in carrying on work within the terms of the contract is recoverable from the bondsman as a supply furnished the contractor. These cases proceed on the theory that it was the use of the machinery that was consumed in the work, not the machinery itself, and that this use, being distinguishable from the machinery, could be recovered for against the bondsman as a supply. If this distinction is sound, then the cases are in line with the other cases cited, as such "use"

was necessarily consumed in carrying on the work. The appellant argues, however, that the distinction is not sound; that there is no just ground for holding that one who rents to a contractor the tools and working appliances necessary for the prosecution of a particular work may have recovery against the contractor's bondsmen for the rental value of the articles furnished, while one who sells the contractor the same character of articles on credit has no claim against the bondsmen for any part of the purchase price. But, if this be true, and it be true that the contractor's working equipment is not to be deemed a supply, it argues that the decisions cited are erroneous, rather than that the appellant's goods fall within the meaning of the term supplies.

Our conclusion is that the judgment must stand affirmed.

MORRIS, C. J., ELLIS, MAIN, and CROW, JJ., concur.