BOARD OF PUBLIC EDUCATION IN WILMINGTON, a corporation existing under the laws of the State of Delaware, for the use of Brosius & Smedley Co., a corporation of the State of Delaware, v. THE AETNA CASUALTY AND SURETY CO., a corporation existing under the laws of the State of Connecticut.

(*February* 15, 1932.)

HARRINGTON and RICHARDS, J. J., sitting.

*John J. Morris, Jr.,* for plaintiff.

*Aaron Finger* for defendant.

Superior Court for New Castle County, No. 71, November Term, 1931.

HARRINGTON, J., delivering the opinion of the Court:

The important question for us to determine is whether the cost of lumber which was used for scaffolding, but which was not actually incorporated in the building erected by the contractor, is covered by his bond.

The bond in question was executed pursuant to the provisions of *Chapter* 224, *Vol.* 29, *Laws of Delaware,* and provides for the payment of all lawful claims of "material men and laborers for labor performed, and materials furnished in the carrying forward, performing or completing" of the contract referred to in it.

It thus appears that its language is somewhat broader in its scope than the language of the old mechanic's lien statutes. See *Revised Code* 1915, § 2843. The same is also true of the statute pursuant to which this bond was executed. In interpreting its meaning we must also bear in mind that the Supreme Court of this state, in *State, use of Pa. R. Co., v. Ætna Cas. & Surety Co.,* 4 *W. W. Harr.* (34 *Del.*) 158, 145 *A.* 172, 174, in considering a similar bond, adopted the rules applied in the Federal Courts and, therefore, held:

1. That the provisions of *Chapter* 224, *Vol.* 29, *Laws of Delaware,* and bonds given thereunder should be more liberally construed than the usual mechanic's lien statute.

2. That applying that rule of construction, it was not absolutely necessary for labor done to be directly incorporated in the work covered by the contract in order to come within the provisions of a contractor's bond given pursuant to the statute.

Referring to the particular case before it, and after citing numerous Federal cases and stating the facts involved in them, the court then in substance said that in determining whether services performed were covered by the contractor's bond, the test was not the place where they had been performed but the nature of such services and

whether they had in a proximate sense contributed to the prosecution and completion of the work referred to in the bond. See, also, *Amer. Surety Co. v. Lawrenceville Cement Co. (C. C.)*, 110 *F.* 717.

In this connection, the court also added: "With that as the test, labor and materials have been held as not too remote under the circumstances referred to in the cases above cited."

Largely based on this statement, the plaintiff apparently contends that the lumber furnished by the Brosius & Smedley Company, though merely used for scaffolding and not actually incorporated in the Warner School Building, was nevertheless used for a purpose so necessary to the carrying forward, performing and completing of the building to be erected, that it comes within the terms of the bond sued on.

As already intimated, the sole question before the court in *Pa. R. R. Co. v. Ætna Cas. & Surety Co.* was whether labor performed by a railroad company in transporting stone from a distant point to the place where it was subsequently incorporated in the road to be built, was covered by the contractor's bond.

That the same general principle applied in that case has in some cases been applied to materials furnished, though such materials were not actually incorporated in the building, or other work provided for by the contract, must be conceded; but whether it will govern a particular case necessarily depends on the facts of that case. That it was applied in favor of the seller in *Tit. Guar. & Trust Co. v. Crane*, 219 *U. S.* 24, 31 *S. Ct.* 140, 55 *L. Ed.* 72, and in *Brogan v. Nat. Surety Co.*, 246 *U. S.* 257, 38 *S. Ct.* 250, 62 *L. Ed.* 703, *L. R. A.* 1918*D,* 776, was pointed out by the court in the Delaware case above referred to. Considering the facts involved in those cases it does not necessarily follow, however, that the same rule should be applied in this case.

Where lumber furnished is necessary, in some particular, to the completion of the work covered by the contract, and though not actually incorporated in the finished structure is so changed and consumed in its use, in a practical sense as to have lost its character and usefulness as lumber, the defendant company concedes that it is covered by the contractor's bond. It contends, however, that there is no evidence before us in this case that justifies the application of that principle; and that the lumber in question is, therefore, in the same category as a pick or shovel handle, or some other tool or implement used by the contractor in and about the construction of the school building covered by the contract, but not of such a character as to be ordinarily and necessarily consumed in its use on that particular contract. In other words, it contends that so far as the evidence shows this lumber merely constituted a part of the building equipment of Lutz & Co. that could be subsequently used by that company in other construction work.

The general principle relied on by the defendant company is well established in suits on bonds of this character. Perhaps its most usual application in the reported cases is to lumber necessarily used in making concrete forms and to lumber or other materials used in the preliminary false work necessary in the construction of bridges; but there is no reason why it should be confined to cases of that character if the evidence justifies its application.

In *Beals v. Fidelity & Dep. Co.*, 76 *App. Div.* 526, 78 *N. Y. S.* 584, 585, affirmed without opinion in 178 *N. Y.* 581, 70 *N. E.* 1095, the court in a suit on a bond and in connection with this principle said:

"Its purpose [the bond] was to afford protection to those whose labor performed the work under contract, and to those who furnished material which entered into and became a part of, or was naturally consumed in or about the completion of, the work in question."

See, also, *Emp. State Surety Co. v. Des Moines*, 152 *Iowa* 552, 131 *N. W.* 870, 132 *N. W.* 837; *Nat. Surety Co.*

*v. U. S. (C. C. A.)*, 228 *F*. 577, 586, *L. R. A*. 1917*A*, 336; *Gary Hay & Grain Co. v. Carlson*, 79 *Mont*. 111, 255 *P*. 722; *Nye-Schneider, etc., Co. v. Bridges, et al.*, 98 *Neb*. 27, 151 *N. W*. 942; *City Retail Lumber Co. v. Title Guar. & Surety Co.*, 72 *Wash*. 300, 130 *P*. 345, 43 *L. R. A*. (*N. S.*) 162, *note.*

None of these cases involved lumber used for scaffolding but there are dictums in several of them to the effect that lumber consumed in its use for that purpose is within the terms of a contractor's bond such as is involved in this case.

While the facts were very different, substantially the same general principle was also involved in *Brogan v. Nat. Surety Co.*, 246 *U. S*. 257, 38 *S. Ct*. 250, 252, 62 *L. Ed*. 703, *L. R. A*. 1918*D*, 776, *supra.*

In that case, the contract covered by the bond was to deepen the channel of a certain river located in a comparative wilderness in Northern Michigan, and at a place remote from any settlement, to say nothing of boarding houses. By reason of that fact, the contractor was compelled to maintain a camp and to provide board for the laborers employed in the work to be done. The court, therefore, held that groceries and provisions furnished and used in such camp were within the terms of the contractor's bond. In the course of his opinion, Mr. Justice Brandeis pointed out that the trial court had found that the supplies furnished "were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond"; and stated that this finding was decisive of the case. After differentiating the particular case from cases where the men were merely boarded for profit and the supplies furnished were not, therefore, necessary to the prosecution of the work, he then added that according to the undisputed facts "the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges it was

indispensable to the prosecution of the work, and it was used exclusively in the performance of the work."

Based on that case (*Brogan v. Nat. Surety Co.*, 246 *U. S.* 257, 38 *S. Ct.* 250, 62 *L. Ed.* 703, *L. R. A.* 1918*D*, 776), Donnally in his work on *The Law of Pub. Contracts*, § 332, says that under the rule adopted by the Federal courts liability on a contractor's bond is not limited to the labor and materials directly incorporated in the work to be done, but "includes anything which is an integral part of the work, and necessarily involved in it, anything indispensable to the prosecution of the work and used exclusively in its performance."

Whatever doubts there might be as to the meaning of the first part of this definition, if it stood alone, when it is read in connection with the second part of it and the language of the court in the case above referred to, it is apparent that in order to apply to materials furnished that did not actually go into the work, such materials must not only have been necessary to its construction, but must also have been consumed in their use in its performance.

While that question is not involved here and we have not deemed it necessary to examine the particular statutes involved, perhaps we might also add that the same general principle seems to have been applied in some few of the more recent mechanic's lien cases. *E. R. Darlington Lumber Co. v. Westlake Construction Co.*, 161 *Mo. App.* 723, 141 *S. W.* 931; *Barker, etc., Lumber Co. v. Mar. Pap. Mills Co.*, 146 *Wis.* 12, 130 *N. W.* 866, 36 *L. R. A.* (*N. S.*) 875. See, also, *Giant-Powder Co. v. Oregon Pac. Ry. Co.*, (*C. C.*) 42 *F.* 470, 8 *L. R. A.* 700; *Schag. Powder Co. v. G. & J. Ry. Co.*, 183 *N. Y.* 306, 76 *N. E.* 153, 2 *L. R. A.* (*N. S.*) 288, 111 *Am. St. Rep.* 751, 5 *Ann. Cas.* 443; 36 *L. R. A.* (*N. S.*) 866, *note.*

*Tit. Guar. & Tr. Co. v. Crane*, 219 *U. S.* 24, 31 *S. Ct.* 140, 55 *L. Ed.* 72, *supra*, is not inconsistent with this rule. In that case the court held that patterns furnished the con-

tractor to be used in its moulding department to make certain necessary castings which entered into the construction of the engine for the vessel to be built, were materials covered by the contractor's bond. The necessary inference from these facts, therefore, is that the patterns in question were for special castings for that particular engine and, therefore, could not readily be used in any other work, or constitute a part of the equipment of the contractor.

In commenting on this case the court in *Nat. Surety Co. v. U. S. (C. C. A.)*, 228 *F*. 577, *L. R. A.* 1917A, 336, said it appeared from the opinion that the patterns in question were considered by the court as involving a claim for labor done rather than for materials furnished, but in *Brogan v. Nat. Surety Co.*, 246 *U. S.* 257, 38 *S. Ct.* 250, 62 *L. Ed.* 703, *L. R. A.* 1918D, 776, *supra*, the court apparently did not so construe that case.

Though based on the language of the particular bond sued on, the plaintiff's contention may perhaps be supported by *Hilton v. Universal Constr. Co.*, 202 *Mo. App.* 672, 216 *S. W.* 1034, where the lumber in question had been necessarily used to support the sides of a trench dug in constructing a sewer and the bond provided for payment for all lumber and materials "used" in the work. Some of the lumber included in the plaintiff's claim had to be left in the trench when the sewer was completed, but some of it had been taken out and was subsequently washed away by a sudden freshet. Apparently on this evidence alone, the plaintiff, nevertheless, recovered for all the lumber furnished by him.

If this case is intended to apply a broader rule than the cases hereinabove cited, as yet, few of the reported cases have gone that far.

That the price of the tools and implements purchased by the contractor and composing a part of the necessary and proper equipment of its business, as such, would not come within the terms of the defendant's bond, must be

conceded. *Beals v. Fidelity & Dep. Co.,* 76 *App. Div.* 526, 78 *N. Y. S.* 584, affirmed 178 *N. Y.* 581, 70 *N. E.* 1095; *Nye-Schneider v. Bridges,* 98 *Neb.* 27, 151 *N. W.* 942; *U. S., use of Laughlin, v. Morgan (C. C.),* 111 *F.* 474; *City Retail Lumber Co. v. Title Guar. & Sur. Co.,* 72 *Wash.* 300, 130 *P.* 345; *Heltzel Steel Form Co. v. Fid. & Dep. Co.,* 168 *Ark.* 728, 271 *S. W.* 325; *United States,* to *Use of Lanham & Bro., v. Jacoby,* 5 *Penn.* 576, 61 *A.* 871; 43 *L. R. A.* (*N. S.*) 165, *note.*

But the question for us to determine is whether, under the facts of this case, the lumber furnished by the plaintiff company must be classed as a part of the contractor's equipment or whether it must be classed as materials furnished. The defendant company in support of its contention that such lumber must be classed as equipment, in part, relied on *Oppenheimer, et al., v. Morrell,* 118 *Pa.* 189, 12 *A.* 307, and *Hoffman Lumber Co. v. Gibson,* 276 *Pa.* 79, 119 *A.* 741. To these cases might also be added *Friedman v. Hampden County,* 204 *Mass.* 494, 90 *N. E.* 851, which, when carefully read, contains a dictum to the same effect. Both of the cases cited involved lumber used in scaffolding but both were mechanic's lien cases in which rules of strict construction were applied and wherein it was, therefore, held that the fact that the lumber furnished was not actually incorporated in the building, or even intended to be, was fatal to the plaintiff's case.

As we have already indicated, the decision of this question must necessarily depend on the evidence before us, and unfortunately for the plaintiff, even conceding that there was sufficient evidence from which the necessity of the use of scaffolding might be inferred, the testimony was very meager on the other crucial question in the case.

One witness did testify that lumber used for scaffolding was generally of very little use after such scaffolding had been torn down, but the only testimony that in any way referred to this particular lumber was to the effect that

one load of it had been sold by the defendant company to a contracting plasterer and the rest of it to a second-hand lumber dealer after Lutz & Co., the contractors, had failed financially and had, therefore, quit the job and left the state.

There was one other reference to the condition of this particular lumber after the scaffolding in which it was used had been torn down, but on cross-examination that appeared to be hearsay testimony, and, therefore, cannot be considered by us.

While differing in some particulars the facts of this case are more like *City Retail Lum. Co. v. Tit. Guar. & Sur. Co.*, 72 *Wash.* 300, 130 *P.* 345, than any case that has been called to our attention. In that case, ties were sold to a contractor who had agreed to grade a city street. The ties in question were intended to be used for a temporary railroad to haul dirt, in the prosecution of the work covered by the contract, and in fact were used for that purpose. Their purchase price was not paid and the question was whether they were covered by the contractor's bond.

It appeared from the evidence that such ties were not only not consumed in their use, in that particular work, but that they were also used by the purchaser in the performance of two other grading contracts subsequently procured by him, and were finally sold, for a small sum, by his receiver in bankruptcy. There is no evidence in this case that the lumber in question was used by the contractor, or by any one else, in any subsequent work; but on the other hand while it appears that it was intended to be used as scaffolding and was so used, there is no proof whatever that it was so consumed in its use that it could not have been used again, as lumber, and whether for scaffolding or otherwise. The mere fact that one load of it was sold to a contracting plasterer and the remainder to a second-hand lumber dealer, coupled with the fact that the contractor had failed financially and had subsequently quit the job

and left the state; and that the lumber in question had been thereafter sold by the defendant company, as surety on the bond, certainly does not establish that fact.

Having, therefore, failed to prove an essential element in its case, the Brosius & Smedley Company cannot recover for that part of the lumber furnished by it, that was merely used for scaffolding.

The plaintiff company also contends that where materials furnished were appropriate for use in the building and were delivered for that purpose, there could be a recovery on the bond, though it appeared that they had not been actually incorporated in such building. *Red Wing Sewer Pipe Co. v. Donnelly*, 102 *Minn.* 192, 113 *N. W.* 1, 120 *Am. St. Rep.* 619; *U. S., use of P. B. Mill Co., v. Mass. Bonding & Ins. Co. (D. C.)*, 198 *F.* 923, 43 *L. R. A. (N. S.)* 163, *note*.

But it is not necessary for us to consider that question, as it not only appeared that the lumber in question was used for scaffolding, but the fair inference from the evidence is that the plaintiff company knew that it was merely intended for that purpose.

The plaintiff company is, however, entitled to judgment for $488.67, being $424.87 with interest thereon from May 22, 1929, to the day this case was heard, for materials furnished that were actually incorporated in the Warner School Building.

The defendant company claims that it offered to pay this part of the plaintiff's claim about June 1, 1931, under such circumstances as to have executed an actual tender of the amount due, but we do not think that the evidence, considered as a whole, sustains that contention.

Judgment will be entered for the plaintiff company in accordance with this opinion.