WARNER COMPANY, a corporation of the State of Delaware,

*vs.*

EVERETT B. SCHOONOVER, Trustee of Irving V. A. Huie, Inc., West Berne, New York, NATIONAL SURETY COMPANY, a corporation of the State of New York, GEORGE S. VAN SCHAICK, State Superintendent of Insurance, New York, N. Y., STATE HIGHWAY DEPARTMENT OF THE STATE OF DELAWARE, GEORGE S. WILLIAMS, Treasurer of the State of Delaware, JAMES HENRY HAZEL, Auditor of Accounts of the State of Delaware.

*New Castle, May 23, 1934.*

*E. Ennalls Berl,* of the firm of Ward & Gray, and *David F. Anderson,* for receiver, exceptant.

*Sidney E. Smith,* of Philadelphia, Pa., for J. Jacob Shannon.

*Thomas C. Frame, Jr.,* for George and Lynch.

*John B. Hutton,* for I. D. Short Lumber Co. and Walter T. Massey.

*Melvin Hopkins,* for Holt Oil Co.

THE CHANCELLOR: The test of whether or not a given claimant is entitled to share in the fund is whether he is of the class of persons who are protected under the bond. That is accepted on all sides, and I accept, without deciding, what every person in interest accedes to.

The bond was given in obedience to and clearly follows the statute (29 *Delaware Laws, Chapter* 224). The statute is as follows:

"2644 *A. Sec.* 25 *A.* From and after the approval of this Act, every person, firm or corporation before being awarded any contract for the construction, alteration or repair of any building, street, road, or other public improvement by the State or any County, municipality, school district, or other political sub-division of the State, the price of which equals or exceeds the sum of Five Hundred Dollars ($500.00), shall furnish a bond with a corporate surety or sureties authorized and empowered to do business in this State under the General Laws of this. State relating to Surety Companies, in a sum equal to seventy-five per centum of the contract price of the work;

conditioned that the contractor shall well and truly pay to all and every person furnishing material or performing labor in and about such public improvement, all and every sum and sums of money due him for all such labor and materials for which the contractor is liable; and every person furnishing material or performing labor as aforesaid, is hereby authorized to maintain an action on said bond for his own use in the name of the State or the political sub-division thereof, authorizing the contract, in any Court of competent jurisdiction for the recovery of such sum or sums of money as may be due to said person from the contractor. The word 'person' within the meaning of this Act shall embrace individuals, firms and corporations."

This statute and a bond given thereunder was before the Supreme Court in *State v. Ætna Casualty & Surety Co.,* 4 *W. W. Harr.* (34 *Del.*) 158, 145 *A.* 172, 173. In that case it was said that "such statutes as this and the surety bonds given thereunder 'should be liberally, not narrowly, construed.'" But liberality of construction cannot justify an extension of meaning beyond the limits of the statute's clearly expressed terms. *Board of Public Education v. Ætna Casualty & Surety Co.,* 4 *W. W. Harr.* (34 *Del.*) 355, 152 *A.* 600. With these principles in mind, the various claims will be examined with the view of determining whether they fall within the scope of the bond's contemplation.

1. Under this head are a claim for premiums on policies of workmen's compensation insurance, a claim for telephone service and a claim for premiums on the National Surety Company's bond. Assuming the contractor to have received the benefits which these charges represent, yet it is impossible to see how they can be properly described as material furnished or labor performed in and about the construction of the highway. That being so, the claims do not fall within the protection of the bond, and by the agreed test the exceptions to them should be sustained.

2. The class of claims under this head represents services rendered not to the contractor but to sub-contractors, such as claims for board and labor. Since the bond, follow-

ing the statute, covers only "labor and materials *for which the contractor is liable,*" and since there was no privity of contract between the contractor and the claimants under this head, it follows that the exceptions to the claims of such claimants should be sustained. *Board of Public Education v. Ætna Casualty & Surety Co., supra.* One subcontractor stipulated at the hearing that the amount payable to him on his claim, which is not excepted to, should be applied to the payment of the claims filed by those persons with whom he stood in privity. The amount allowed on his claim will be decreed in accordance with his stipulation.

3. Under this head claims of miscellaneous sorts are grouped. They are for materials and the question in each instance is whether the claimant was a "person furnishing material * * * in and about the construction of said highway," within the meaning of the statute and the bond.

The contention is made by the solicitor for the receiver that the materials in order to be embraced within the scope of the bond must have been such as were designed to become a component part of the structure. This, however, is too narrow a view to take of the matter. The Superior Court of this State in *Board of Public Education v. Ætna Casualty & Surety Co.,* 5 *W. W. Harr.* (35 *Del.*) 100, 159 *A.* 367, had before it the question whether certain lumber which was used for a scaffolding had been furnished "in the carrying forward, performing or completing of said contract." Notwithstanding the variation in phraseology between the condition of the bond in that case and the condition of the bond in this one, I find it difficult to discover any greater breadth of scope in the former than in the latter. "In and about the construction," which is the language of the bond in this case, seems to me to be about the equivalent of "in the carrying forward, performing or completing of said contract," which was the language in the Superior Court case.

The Superior Court in the case just cited held that

unless the lumber that went into the scaffolding was so consumed in its use that it could not have been used again as lumber, whether for scaffolding or otherwise, it could not be said to have been furnished within the meaning of the bond. The evidence failed to show that the lumber was so consumed and therefore the claim of the lumber dealer was rejected. If the evidence had shown that the scaffolding had been so used, notwithstanding the lumber composing it did not become a component part of the structure, the Superior Court was evidently of the opinion that the claim would have been within the bond. Unless this is so, there would of course have been no point to the discussion by the court of the evidence bearing upon the condition of the lumber after its use.

I regard the case of *Board of Public Education v. Ætna Casualty & Surety Co., supra,* as an authority in this State directly sustaining the view that materials, in order to be furnished in and about the construction of a public improvement, as contemplated by the statute and bond given thereunder, need not become or have been designed to become, a component part of the physical structure. *Brogan v. National Surety Co.,* 246 *U. S.* 257, 38 *S. Ct.* 250, 62 *L. Ed.* 703, *L. R. A.* 1918D, 776, may be considered an authority to the same effect, when it is considered that the *Federal Act* (40 *USCA* § 270) which that case construes and which provides for a bond to cover labor and "materials in the prosecution of the work provided for in such contract," is substantially the same in meaning and purpose as the *Delaware Act* which provides for a bond to cover the furnishing of "material * * * in and about such public improvement."

None of the miscellaneous claims, therefore, which are grouped under this head should be rejected as lying outside the terms of the bond solely because of the fact that the materials they represent were not physically incorporated in the completed structure.

It is to be observed, however, that if they were not so

physically incorporated in the structure, they must, if they are to be covered by the bond, have been either actually or practically consumed or used up in connection with the completion of the work. In such event, in an ideal sense, they may be said to have entered into the structure; much as the energy of the laborer who worked on the project may be said to have become incorporated in it.

It is now in order to notice the particular character of the various claims which are involved in this miscellaneous category.

(a) There is a claim for rental of equipment, consisting of such things as a paver, sub-grader, road pumps, pipe lines, etc. The equipment was leased to the contractor. In *Board of Public Education v. Ætna Casualty & Surety Co.,* 5 *W. W. Harr.* (35 *Del.*) 100, 159 *A.* 367, it was determined that tools and implements purchased by the contractor and composing a part of the necessary and proper equipment of his business, as such, are not within the terms of the bond provided for by the statute. The reason for this is that tools and equipment cannot be said to have entered into the construction either by being physically incorporated therein or by being consumed in the interest of its completion. While they are materials which are employed in doing the work of construction, yet they survive its performance and may be used upon other projects. This consideration is regarded by some courts as sufficient to exempt tools and implements from the protection which the statutes, and bonds given thereunder, afford generally to materials which are furnished in and about the work. It is very clearly so stated in *Beals v. Fidelity & Deposit Co.,* 76 *App. Div.* 526, 78 *N. Y. S.* 584, *affirmed* 178 *N. Y.* 581, 70 *N. E.* 1095, and in *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.,* 98 *Neb.* 27, 151 *N. W.* 942. In *U. S. v. Morgan,* (*C. C.*) 111 *F.* 474, the reason for the view that tools and implements do not enter into the construction of public works under the Federal act was stated to be that they are used by the contractor for his own convenience and advantage in the execu-

tion of his contract. The reason is put in another way by the court in *Kansas City, etc., v. Youmans*, 213 *Mo.* 151, 112 *S. W.* 225, 233, as follows: "The contract presupposes that the contractor has and will furnish, upon his own account, the necessary tools, implements, and appliances with which to perform the work."

But it is said that one who leases tools and equipment to a contractor is differently circumstanced from one who sells them to him, and that whereas the latter by all the authorities falls outside the statute's contemplation, the former should not. The distinction is a difficult one to grasp, especially when the reason is kept in mind which underlies the exception of tools and equipment from the general category of materials furnished. Tools and equipment which are rented are no more consumed on the job, and none the less supposed by the contract to be possessed by the contractor, than they would be if they were purchased outright. Therefore if in the latter case they do not fall under the classification of material furnished, they cannot in the former. The following cases exclude tools and implements that were rented from the scope of such bonds as we are here considering. *Stein, et al., v. J. T. Stout Co., Inc., et al.*, 155 *A.* 457, 9 *N. J. Misc.* 685; *Commonwealth v. A. Stryker, Inc.*, 109 *Pa. Super.* 137, 167 *A.* 459; *State v. National Surety Co.*, 148 *Md.* 221, 128 *A.* 916. There are some federal cases which appear to take another but a minority view. Of course if the lessor has agreed to do work for the contractor and to use his own tools and equipment on an agreed rental basis, a different question would be presented. But such was not the situation in this case.

(b) Some of the claims are for supplies which were used in the progress of the work. Those supplies which were actually consumed by the use or rendered worthless thereby, such as burlap and seine twine, qualify as coming within the bond. Such supplies however as wire rope for use in operating gas or steam shovels, ordinary shovels,

pickhandles and the like, are not within the bond. Fuel, lubricating oil and the like supplies which are necessary for the operation of machinery and are consumed in the use, fall within the bond. *U. S. to Use of J. E. Sadler & Co. v. W. H. French Dredging & Wrecking Co., (D. C.)* 52 *F.* (2d) 235.

4. Finally, claims are presented for labor done in the way of repairing machinery which had gotten out of order. As such claims are associated with equipment which the contract presupposes the contractor to possess in order to do the work, they do not fall within the bond. *Standard Boiler Works v. National Surety Co.,* 71 *Wash.* 28, 127 *P.* 573, 43 *L. R. A. (N. S.)* 162.

The foregoing, I believe, supplies the principles by which the exceptions may be disposed of. The task of applying those principles to the facts is one which the solicitors for the parties should endeavor to perform by agreement. If irreconcilable differences arise, they may be submitted to the court for settlement.