SOUTHERN SURETY CO. et al. v. W. E. CALLAHAN CONST. CO. et al. (No. 7550.)

(Court of Civil Appeals of Texas. San Antonio. April 17, 1926. Rehearing Denied May 19, 1926.)

1. Assignments ⬉114—Construction company, assigning contract with water improvement district to defendant, so as to make it run directly with defendant, is only secondarily liable for performance of defendant's contract.

Where construction company, with consent of water improvement district, assigned contract to defendant company under circumstances making it, in effect, a contract between defendant and district, construction company was only secondarily liable for performance of contract by defendant.

2. Assignments ⬉96—Assignee agreeing to perform all conditions of contract with water improvement district, subject to change in plans, held to have no claim against assignor for changes not authorized or fraudulently made.

Where assignee agreed to perform all conditions of contract with water improvement district, in which it was provided that plans might be changed by engineer of district, assignee has no claim against assignor based on change in plans, though it was alleged that engineer did not make changes, or that he fraudulently made them.

3. Compromise and settlement ⬉16(1)—Acknowledgment of payment in full according to terms of contract, with knowledge of facts on which claim for extra burdens was based, held agreement of no cause of action for such extras.

Contractor, acknowledging receipt of full payment according to terms of contract in a

contract subsequently made with plaintiff company, with knowledge of all facts on which its cross-action for extra burdens was based, thereby agreed that it has no cause of action for extras against plaintiff.

**4. Assignments ⚙═96—Construction company cannot be held liable to assignee taking over part of work for arbitrary acts of engineer of improvement district supervising work.**

Construction company, contracting for irrigation work with water improvement district, cannot be held liable, for arbitrary or fraudulent acts of district's engineer supervising work, to assignee taking over part of construction under contract, in effect running directly with district.

**5. Parties ⚙═91—Defendant cannot complain of misjoinder of another defendant not objecting to being joined.**

In action involving claims against company taking over part of irrigation work under contract with water improvement district, if improvement district did not object to being joined in suit after its plea of privilege was sustained, company has no cause for complaint on grounds of misjoinder of parties.

**6. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Contractor's bond to water improvement district held statutory bond, though private corporation was also beneficiary (Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f).**

Bond by construction company, contracting to do irrigation work, made in favor of water improvement district, a public corporation, is a statutory bond, under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, and fact that private corporation, whose contract was taken over by the construction company, was also a beneficiary thereof did not alter its statutory character.

**7. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Claim of all persons contemplated by statute is secured under contractor's bond to water improvement district after giving preference to district (Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f).**

Under contractor's bond to water improvement district, claim of every one contemplated by Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, was secured within bounds of amount named in bond, after giving preference to the district.

**8. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Surety on contractor's bond to water improvement district is liable for claims of laborers and materialmen (Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f).**

Surety company, giving bond under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, for construction of irrigation work with water improvement district, in which it bound itself to pay all sums of money due for supplies, teams, equipment, material, and labor used in work, is liable for claims of laborers and materialmen.

**9. Appeal and error ⚙═1073(1)—Surety, liable for labor and material under bond of original contractor, cannot complain of judgment based on bond of contractor taking over part of work.**

Surety company, liable for claims for labor and material on bond of original contractor, cannot complain because judgment was based on bond of contractor taking over part of work, where it is liable under either bond.

**10. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Surety on contractor's bond to water improvement district held liable for merchandise and supplies furnished for use of laborers, though part was diverted.**

Where merchandise and food supplies purchased by contractor were necessary by reason of extent of irrigation work performed for water improvement district and distance from any town in which supplies could be purchased, surety on contractor's bond, bound to pay for supplies and equipment in performance of contract, is liable to parties furnishing such materials, believing that they were intended for laborers alone, though part of supplies were diverted to others.

**11. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Surety, on contractor's bond to water improvement district held liable for lumber used for concrete forms.**

Materialmen furnishing lumber to contractor for forms into which concrete was poured in constructing dams for water improvement district is entitled to recover value of lumber from surety on contractor's bond, providing for payment of labor and material, where lumber was worthless after such use; entire consumption of lumber not being required as condition for surety's liability.

**12. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Surety on contractor's bond to water improvement district held not liable for cost of telephone line.**

Claim of electric company erecting telephone line which was not, and could not be, used in construction of dams for water improvement district is not recoverable from surety on contractor's bond providing for payment of labor and material.

**13. Waters and water courses ⚙═228½, New, vol. 10A Key-No. Series—Surety on contractor's bond to water improvement district held not liable for insurance fees incurred by contractor.**

Insurance fees incurred by contractor obligated to carry necessary insurance by contract to do work for water improvement district are not recoverable from surety on contractor's bond covering labor and materials, but making no mention of insurance fees.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by the W. E. Callahan Construction Company against the Southern Surety Company, the B. F. & C. M. Davis Company, and others, in which the Davis Company filed a

---

⚙═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cross-action, and in which numerous interventions were filed. From the judgment, defendants Surety Company and Davis Company appeal. Affirmed in part, and in part reversed and rendered.

Thompson, Knight, Baker & Harris, of Dallas, and John T. Suggs, of Denison, for appellants.

Huvelle & Atwell, of Dallas, Capps, Cantey, Hanger & Short, of Fort Worth, Church, Read & Bane, M. M. Plowman, Geo. K. Holland, Leake, Henry, Wozencraft & Frank, Coke & Coke, and Thomas G. Murname, all of Dallas, Bullington, Boone & Humphrey, John B. King and Raymond M. Myers, all of Wichita Falls, J. O. Hughes and Beall Worsham, Rollins, Burford & Ryburn, all of Dallas, and Bryan, Stone, Wade & Agerton and A. M. Scott, all of Fort Worth, for appellees.

FLY, C. J. This court has been compelled to consult the transcript containing over 800 pages, of which 563 pages are devoted to petitions, amended and supplemental, pleas of privilege, controverting affidavits, pleas in intervention, and answers. We ascertain from the first amended original petition that the W. E. Callahan Construction Company instituted this suit by a complaint against the Southern Surety Company, B. F. & C. M. Davis Company, and some 40 other corporations and individuals, as well as "generally of all persons, firms, and corporations claiming an indebtedness against B. F. & C. M. Davis Company, a corporation, by reason of the performance or attempted performance, by said B. F. & C. M. Davis Company of its contract with the plaintiff herein." It was alleged that the plaintiff, in the suit on November 29, 1921, made a contract with the Wichita county water improvement district No. 1 to perform certain work in connection with an irrigation scheme such as the erection of certain concrete structures and bridge construction. It was alleged that the plaintiff executed and delivered to the water improvement district a certain bond in the sum of $500,000 signed by the Southern Surety Company, as surety, and conditioned for the full and faithful performance of the contract. It was further alleged that the construction company had, under the provisions of the contract, entered into a contract with B. F. & C. M. Davis Company to do and perform certain of the work it had contracted to perform, but which the contract with the water improvement district permitted the construction company to subcontract, provided written consent was obtained from the water improvement district and that subcontractors' bonds were made directly payable to the district. The work subcontracted to the Davis Company covered the concrete work and certain bridge construction. The Davis Company proceeded to work under that contract, but afterwards ceased work, and

then, on October 5, 1922, the construction company, Davis Company, improvement district, and the surety company entered into a contract. After that contract was made, creditors of the Davis Company sued it, and caused writs of garnishment to be served on the construction company, all of whom were made parties by the construction company, and it tendered into court all sums admitted by it to be due the Davis Company. There were numerous interventions in the suit and the Davis Company filed a cross-action seeking a judgment for $150,000 against the construction company in excess of the sum paid into court. The court sustained a general demurrer to the cross-action of Davis Company, and it was dismissed in view of a refusal to amend. The trial was had without a jury, and judgment rendered denying any recovery to Davis Company in excess of the amount tendered by the construction company; injunctions previously issued were perpetuated; awards were made to the interveners as against the Davis Company on their claims, and also against the surety company on the bond of Davis Company on which it was the surety. To the surety company a sufficient amount of the money tendered by the construction company was awarded to reimburse it for any amounts paid to the creditors of the Davis Company. The Davis Company and the surety company appealed, and are the appellants in this suit. They have filed separate bonds and briefs. At the request of the surety company, the trial judge filed his conclusions of fact and law, and a statement of facts accompanies the record.

On November 29, 1921, the Wichita county water improvement district and the W. E. Callahan Construction Company entered into a written contract by which the latter bound itself to construct certain storage dams and other improvements, furnishing all necessary material. The construction company executed to the water improvement district a bond in the sum of $146,000 with the Southern Surety Company as surety for the performance of all work and the furnishing of all material necessary for the construction of a diversion dam named in a certain contract. The bond was dated November, 1921, and on the same date another bond for the erection of a storage dam was executed in the sum of $113,000 between the same parties, and a third bond for $140,000 between the same parties, of the same date, in regard to the same contract for dams.

On December 3, 1921, a lengthy contract was entered into between the construction company and the Davis Company whereby the latter undertook to perform that part of the contract between the improvement district and the construction company in relation to certain items about the storage dam, the diversion dam, and the south canal and south canal laterals according to certain

schedules mentioned in the original contract. For the faithful performance of this subcontract the Davis Company, as provided in the original contract, gave a bond with the Southern Surety Company, as surety, in the sum of $175,000, directly to the improvement district .as well as the construction company. The Davis Company did not complete its contract at the time specified in its contract with the construction company, and, said contract being canceled, the Davis Company entered into an agreement with the district, the surety company, and the construction company that the latter should take over all the equipment belonging to the Davis Company, and use it as might be deemed best to perform the contract with the district. There were a number of other matters set out in the contract which was of date October 5, 1922. An auditor was appointed by the court, who reported on the different claims against the Davis Company and the construction company. The following facts were found by the court, which are adopted by this court:

"The work contracted to be done by defendant B. F. & C. M. Davis Company, Inc., was to be done and performed at a place isolated, and where there were no boarding facilities for the employees' of said company while doing such work, and no place in such vicinity where supplies could be had, and that, in' order to properly do such work, it was necessary for said company to provide a boarding and lodging house for its employees, and to establish a supply house where its employees could procure supplies and provisions and the things necessary to be used in the prosecution of such work, and that, because of such necessity, said company established and maintained a place to furnish board and lodging to its employees, and a supply house or commissary to furnish provisions, clothing, materials, and equipment to the men engaged in such work, and that the establishment and maintenance of such board and lodging house and supply house or commissary were necessary for the proper prosecution of such work.

"B. F. & C. M. Davis Company, Inc., boarded employees of other contractors or subcontractors at such boarding house in addition to their own employees.

"The goods, wares, and merchandise purchased and kept in such supply house or commissary were all exposed to sale to the general public, except the merchandise purchased from Swift & Co. and Armour & Co.

"None of the interveners had any notice of B. F. & C. M. Davis Company, Inc., boarding other employees than their own.

"None of interveners had any notice of B. F. & C. M. Davis Company, Inc., offering any of the goods so furnished for sale, and had no notice that any of such goods were used by said B. F. & C. M. Davis Company, other than for the use of their own employees."

We approve the other findings of fact made by the trial judge.

[1] We are of the opinion that it can be reasonably concluded as matters of fact, from the statement of facts, that the construction company, with the consent of the improve-

ment district, assigned its contract to the Davis Company, and the contract between the Davis Company and the construction company was to all intents and purposes a contract by and between the Davis Company and the improvement district, which accepted the same together with a bond made by the Davis Company directly to it. The acceptance of the contract and the bond by the improvement district caused. the Davis Company to become the active party to carry the contract for the performance of the work desired by the improvement district into effect, and the construction company was liable only secondarily for performance of the contract. That conclusion is inevitably reached from the facts in the case, and all of the parties seemed to have proceeded upon that theory. Under that contract the Davis Company bound itself to perform the original contract between the district and the construction company, and the plans and specifications of the original contract were specifically made a part of the Davis Company contract, and it was agreed that such plans and specifications might thereafter be changed. It was the object and intent of the contracting parties to place the Davis Company in the contract in lieu of the construction company. The Davis Company assumed the obligations of the construction company to the improvement district, and the Davis Company was to receive the prices provided for in the original contract. It was to receive the compensation; it was to bear the burdens and liabilities. The improvement district accepted the contract, and the bond was made to it. These facts were all agreed to in the contract made by the construction company, the Davis Company, and the improvement district on October 5, 1922. In the last-named contract the Davis Company released to the construction company all of its rights and interests under its former contract, with the exception of certain ones to be named.

The contract between Davis Company and the construction company, dated December 3, 1921, provided that the construction company should pay the Davis Company the several sums of money specified in certain numbered schedules, 85 per cent. of it on "monthly estimates to be made and approved by the engineer of said water improvement district; the remaining 15 per cent. to be paid when said contract shall have been fully performed, and when all work done thereunder shall have been finally accepted by said engineer." The Davis Company understood the agreement that it should receive the unit prices named in the original contract on the monthly estimates of the engineer, for it reiterates its understanding of such agreement in the last-named contract of the three parties. There can be no doubt that the parties bound themselves in the Davis and construction company contract to be bound as to payments by the estimate made by the engineer

of the water improvement district. Such monthly estimates were essential to the payment of money under the contract to the Davis Company.

[2] In the contract between the Davis Company and the construction company, the former agreed to perform all the conditions of the original contract that were to be performed by the construction company, and in the original contract it was provided that the plans and specifications might be modified, altered, or changed by the engineer of the water improvement district. The contract of the Davis Company and the construction company and the improvement district is attached to, and made a part of the cross-action to which a general demurrer is sustained, and there was no allegation that the changes in the plans and specifications upon which the claim against the construction company is based were not made by the engineer of the improvement district but, on the other hand, the allegations show that the changes were made by the engineer of the improvement district. The cross-action, even with an allegation that the engineer did not make the changes in the plans and specifications or that he fraudulently made them, has no basis for the claim made against the construction company.

[3] Again, in the contract made a part of the cross-petition, the Davis Company acknowledges that it had received full pay according to the terms of the contract with the construction company, and it thereby agreed that it had no cause of action against the party named in the cross-action, for it is recited in the last contract the Davis Company made that it made the contract "for and in consideration of the payment to it of the several sums of money hereinafter stipulated," and the extra sums claimed are not mentioned thereinafter. The admissions in the last contract were made at a time when all the facts were known to Davis Company and its cause of action as set out in the cross-petition was in existence at that time.

[4, 5] The facts show, as well as the allegations of the cross-petition, that the contract made by Davis Company was really a contract with the improvement district, and that the construction company could not be held liable to Davis Company for anything except the payment of the amounts which the district had contracted to pay it, and, if any extra burdens were placed on the Davis Company after it had taken over the contract of the construction company, it could not be held liable for it. If the engineer acted fraudulently, arbitrarily, or unfairly in making the changes, those acts were not chargeable to the construction company. The engineer was not its servant or agent, and it could not be held liable for his acts, fraudulent or otherwise. The cross-action seeks to charge liability to the construction company as to a matter with which, as the cross-peti-

tion shows, it had no connection contractually, and for which it is not liable. Reading every intendment of which the pleading is capable into the cross-petition, it states no cause of action against the construction company, and the court correctly sustained the general demurrer. The third, fourth, fifth, and sixth assignments of error are, therefore, overruled.

[6] Even if it be admitted that the plea of misjoinder of the improvement district was sustainable, we fail to see by what authority the Davis Company had any interest in it. If the improvement district did not object to being joined in the suit after its plea of privilege was sustained, the Davis Company has no cause for complaint. The first and second assignments of error are overruled.

What has been said disposes of the appeal of the Davis Company, and we proceed to the consideration of the brief of the Southern Surety Company. Its liability was based, in the judgment, on the bond given by the Davis Company, and upon which it was a surety, to the construction company and the water improvement district. It must be kept in mind that the Davis Company had assumed all the liabilities of the construction company under its original contract with the water improvement district and that the Davis Company had been substituted for, and taken the place of, the construction company, and that the improvement district had approved of the substitution and accepted a bond for $175,000 given by the Davis Company with the Southern Surety Company as surety.

In article 6394f, Vernon's Sayles' Ann. Civ. St. 1914, it is provided:

"That any person or persons, firm or corporation entering into a formal contract with this state or its counties or school district or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract."

[7-9] The right of the party furnishing labor or material is given by the statute, giving such party a qualified claim on the bond. The district, a public corporation, prosecuting the erection of a public work, made the contract between the construction company and the Davis Company its contract, and obtained a bond which bound the principal and surety to "pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used, in the performance of said contract, as well as any and all other expenses incurred in the performance, or attempted per-

formance, thereof." The bond complies with all the requirements of the statute, and is broad enough to secure those who furnished material and labor. The bond was statutory because made in favor of the public corporation, and the fact that a private corporation was also a beneficiary did not alter its statutory character. Being a statutory bond, the claim of every one contemplated by the statute was secured by it within the bounds of the amount named in the bond, after giving preference to the public corporation. We hold that the surety company is liable, as found by the trial court, on the bond given by the Davis Company, but, if it were not, it is undoubtedly liable on the bond given by the construction company to the district on which it is a surety. Either of the bonds meets the requirements laid down in the case of General B. & C. Ins. Co. v. Waples Lumber Co. (Tex. Civ. App.) 176 S. W. 651, because each provides that it is "payable to the materialmen, or that it should inure to their benefit." However, that case was not about a statutory bond.

The case of Mosher v. Surety Co. (Tex. Com. App.) 229 S. W. 318, gives no support to the contention of the surety company, for it distinctly holds:

"But, independent of any statute, a municipality which has the power to contract for the construction of public buildings has the implied authority to bind the contractors to pay the claims of materialmen and laborers, although such contract is for their benefit."

The bond in the case of Oak Cliff Lumber Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429, made no provision for the payment, as does the bond in this case, of "all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used, in the performance of said contract." In the cited case the bond did not make such full provision for payment of debts due for labor and material. This bond does not provide for indemnity to the owner as the bond in the cited case does.

[10] We follow the last enunciation of the Supreme Court on the subject found in the cited case of Mosher v. Surety Co.; that case being directly in point in this case. The storage and diversion dams were built for a district created by law out of a part of a county, and was a public work. We think the bond was intended to protect the material and labor men as well as the owner. If, as is contended by the surety company, accounts for the material and labor furnished to Davis Company were secured by the bond given by the construction company, it has no ground for complaint for the judgment on the Davis Company bond, for it is also a surety on the construction company bond, and should have been held under the pleadings on that bond as well as the Davis Com-

pany bond. If, however, judgment had been rendered against it on the construction company bond, it would be waging the same contest against its liability.

[11] It is contended by the surety company that it cannot be held as a surety on the bonds for the claims of Armour & Co. and Swift & Co. arising from the sale of meats to Davis Company; of Vinnedge & Co., and Bert Bean Coffee Company for tea and coffee; Wolff Bros. for tobacco and cigars; Hamilton Brown Shoe Company for boots and shoes; Blair Maupin Company, Wichita Falls Produce Company, Goodner Wholesale Grocery Company, Nafzeiger Baking Company for bread and groceries, and Butler Bros. for clothing, notions, and miscellaneous, because such claims are not for the material and supplies covered by the bond. The facts show that the storage and diversion dams were erected across the Wichita river and the canals, ditches, and other things belonging to and necessary to an immense irrigation system. Four million dollars was to be expended. The Davis Company's machinery, tools, etc., were distributed over 30 to 40 miles of territory in Baylor and Archer counties. The work was being done about 50 miles from Wichita Falls, and 7 or 8 miles from the small towns of Dundee and Mabelle. In the language of the surety company, a vast "horde of men" were employed to carry out the contract of the Davis Company and complete the two dams a mile and a half long across the Wichita river, and vast sums would be expended for the labor as well as material. It is admitted that the vast enterprise was being executed in a country far from material and supplies. The laborers had to be fed, and clothing, in many instances, furnished. It was necessary for them to have the foods usually used by civilized men in everyday life, such as meat products, tea and coffee, bread and groceries, as well as boots and shoes, and even cigars and tobacco, clothing, and possibly notions and miscellaneous merchandise, whatever they may be. To secure and keep labor it would appear to be necessary that such things as are mentioned should be accessible to the laborers. The evidence showed that the goods sold were necessities for the men at work, and only occasional sales were made to parties not connected with the work. The sellers of the goods sold them believing they were intended for the laborers alone, and the diversion of a part or all of the merchandise to outside parties would not destroy the necessity for the purchase of the goods to be used in connection with the building of the dams.

[12] Part of the lumber was used in construction and the other for forms. After being used for forms, it was useless for any other purpose. When the Davis Company got through with the lumber used for forms, it was good for nothing but kindling. The lumber was used for forms into which con-

crete was poured, and after its use there it could not be used on any other job. It had no commercial value.

In the case of U. S. Fidelity Co. v. Henderson County, 253 S. W. 835, the Beaumont Court of Civil Appeals held that there was no testimony that certain lumber was used in the construction of a road and was entirely consumed in the work. We know of no rule that requires the entire consumption of materials furnished a contractor before the sureties on his bond become liable to the materialman. If used in such way as to become useless in construction, it would come within the purview of the bond. In other words, it was not necessary to burn the forms used in this case in order to bring the lumber within the purview of the bond. We think the proper result was probably reached in the case cited. We think that the law is correctly given in the case of Brogan v. Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. The liability of the surety company in that case was made to depend on the facts in the case. It was held:

"But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers are materials supplied and used in the prosecution of the public work."

To the same effect is the case of Hastings v. Lowrance (C. C. A.) 252 F. 122.

In the case of Hess v. Turney, 110 Tex. 148, 216 S. W. 621, the local merchants of Bastrop, at the instance and request of a contractor who was building a bridge for the county, furnished goods and merchandise to the laborers at work on the bridge, and the Supreme Court held:

"The surety company was liable, on the bond, for the payment of the debts to the local merchants and laborers, being essentially claims for labor in the prosecution of the work of performing the engineering company's contract."

This supports the judgment herein as to the supplies furnished Davis Company.

[13] We do not think the claim of the General Electric Company for $276.98 against the surety company can be sustained. There is nothing in the bond binding the surety company to pay for a telephone line erected by such General Electric Company, which was not, and could not be, used in the construction of the dams. Neither is there any provision in the bond fixing liability on the surety company for the sum of $1,590.88 contracted by the Davis Company to be paid to the Maryland Casualty Company. It is true, as found by the trial court, that it was provided in the contract between the Davis Company and the construction company that the former should carry all necessary insurance, but no such matter appears in the bond, nor can the language of the bond be so stretched as to include the insurance fees.

Appellant surety company admits in its brief that it is liable to creditors in the sum of $34,000 under the bond given by it to secure claims against the construction company, and, if it is liable for those claims, it is liable for any and all claims for material and labor necessary to complete the work undertaken by the Davis Company. The claims paid off were incurred by the Davis Company.

The judgment will be affirmed as between the Davis Company and all the parties, and as between the Southern Surety Company and all the parties, except the General Electric Company and the Maryland Casualty Company, and as to those parties the judgment will be reversed and judgment be rendered that neither of them take anything as to said surety company, and pay all costs in their behalf expended.

Affirmed in all respects as to the B. F. & C. M. Davis Company and in all respects as to the surety company, except as to the General Electric Company and Maryland Casualty Company, and as to them reversed and rendered.