**B. F. & C. M. DAVIS CO. et al. v. W. E. CALLAGHAN CONST. CO.   (No. 760–4725.)**

Commission of Appeals of Texas, Section B.
Oct. 5, 1927.

**I. Appeal and error ⬤═878(I)—Judgment is final as to party filing no application for writ of error.**

Where party filed no application for writ of error, judgment of Court of Civil Appeals was final as to it.

**2. Waters and water courses ⬤═228½—Contractor's bond to water improvement district held to cover compensation insurance premiums.**

Where contract for irrigation work expressly required contractor to carry compensation insurance, surety on its bond in favor of water improvement district, contracting to pay any expenses incurred in performance of contract not otherwise expressly provided for, was liable for compensation insurance premiums.

**3. Waters and water courses ⬤═228½—Contractor's bond to water improvement district held to cover only supplies going into prosecution of work.**

Contractor's bond to water improvement district to pay for supplies used, or contracted to be used, in performance of contract for irrigation work, covered only supplies necessary to and wholly consumed in prosecution of work provided for in contract, and those furnishing such supplies, to hold surety liable, must show that they went into prosecution of work.

**4. Appeal and error ⬤═268(2)—In absence of exception, trial court's findings of fact govern on appeal.**

Where neither party excepted to findings of fact by trial court, such findings must govern on appeal.

**5. Waters and water courses ⬤═228½—Contractor's bond to water improvement district held to cover only goods sold to contractor's employees through contractor's stores.**

Contractor's bond to water improvement district covering supplies used or contracted to be used in performance of contract for irrigation work covered only goods sold to contractor's employees, through contractor's stores which it was necessary to operate, and not goods sold to general public through such stores.

**6. Appeal and error ⬤═268(2)—Finding not excepted to is binding on appeal.**

Finding of fact that certain goods furnished to contractor were not offered for sale to general public, not excepted to, was binding on appeal.

**7. Waters and water courses ⬤═228½—Contractor's bond to water improvement district held not liable for contractor's debt for general equipment and repairs thereto.**

Surety on contractor's bond to water improvement district, limited to payment of items used and contracted to be used in particular irrigation work, is not liable for debts incurred for contractor's general equipment and for parts and repairs thereto.

**8. Waters and water courses ⬤═228½—Contractor's surety on bond to water improvement district held not liable on claim for gasoline, part of which was sold to general public.**

Contractor's surety on bond payable to water improvement district, and limited to payment of items used and contracted to be used in particular irrigation work, held not liable for claim of one furnishing contractor gasoline, part of which was sold to public in general, in absence of showing what part was used in work in question.

**9. Appeal and error ⬤═1056(4)—Testimony that goods furnished irrigation contractor were used by commercial enterprises held admissible in suit on bond, but exclusion was immaterial in view of findings.**

In action on bond payable to water improvement district in which furnishers of goods to contractor intervened and claimed contractor's surety was liable for goods furnished stores, boarding houses, and auto supply stations, testimony that such concerns were operated as general commercial enterprises was admissible; but, in view of trial court's similar findings, exclusion thereof was immaterial.

**10. Waters and water courses ⬤═228½—Subcontract to construct irrigation system, requiring work according to original contract, held not to require subcontractor to make substantial changes without additional compensation.**

Where contract for construction of irrigation system provided for changes therein for which compensation was to be paid, subcontract requiring subcontractor to build structures according to plans and specifications of original contract, expressly providing that subcontractor was not to have compensation to which original contractor was entitled, did not require subcontractor to make substantial changes and alterations without compensation.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by the W. E. Callaghan Construction Company against the Southern Surety Company and others, in which the B. F. & C. M. Davis Company filed a cross-action, and in which numerous interventions were filed. Judgment for defendant Surety Company and Davis Company was affirmed in part and in part reversed and rendered by Court of Civil Appeals (283 S. W. 1098), and the Davis Company and others bring error. Reversed and remanded.

John T. Suggs, of Denison, for plaintiff in error Southern Surety Co.

Capps, Cantey, Hanger & Short, of Fort Worth, for plaintiff in error Maryland Casualty Co.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error B. F. & C. M. Davis Co. and others.

Crane & Crane, of Dallas, for other plaintiffs in error.

Huvelle & Atwell, Church, Read & Bane, M. M. Plowman, Geo. K. Holland, Leake, Henry, Wozencraft & Frank, Bell, Worsham, Rollins, Burford & Ryburn, Coke & Coke, and Thos. G. Murname, all of Dallas, Bullington, Boone & Humphrey, John B. King and Raymond M. Myers, all of Wichita Falls, Bryan, Stone, Wade & Agerton and A. M. Scott, all of Fort Worth, and J. O. Hughes, of Seymour, for defendant in error.

POWELL, P. J. The nature and result of this case have been accurately stated by the Court of Civil Appeals. See 283 S. W. 1098. We shall not restate the case here, except so far as may be necessary to an understanding of the issues raised in the various applications, all three of which were granted by the Supreme Court. The Wichita county water improvement district No. 1 entered into a contract with the Callaghan Construction Company to erect dams and a general irrigation plant. The construction company, with the consent of the improvement district, sublet much of its work to the Davis Company. The Southern Surety Company made a bond, payable to the Callaghan Company and the improvement district. The relevant portion of said bond reads as follows:

"Now, the condition of this bond and undertaking is such that if the said B. F. & C. M. Davis Company, Inc., shall fully and faithfully perform its said agreement, of date the 3d day of December, 1921, and said original contract executed by W. E. Callaghan Construction Company with said Wichita county water improvement district No. 1, in so far as they relate to the items mentioned in Schedules 1, 2, and 3 of Exhibit A, attached to each of said contracts, to which exhibit reference is here made for a more particular description of said items; and if the said B. F. & C. M. Davis Co., Inc., shall pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used, in the performance of said contract, as well as any and all other expense incurred in the performance or attempted performance thereof, then this bond, or undertaking, shall become null and void; otherwise, it shall remain in full force and effect."

In the case at bar, judgment was rendered by the district court in favor of more than 30 intervening creditors of the Davis Company. The surety company appealed from said judgment. The Court of Civil Appeals affirmed all of the judgments in favor of the intervenors, as against the surety company, except as follows:

"We do not think the claim of the General Electric Company for $276.98 against the surety company can be sustained. There is nothing in the bond binding the surety company to pay for a telephone line erected by such General Electric Company, which was not and could not be used in the construction of the dams. Neither is there any provision in the bond fixing liability on the surety company for the sum of $1,590.88 contracted by the Davis Company to be paid to the Maryland Casualty Company. It is true, as found by the trial court, that it was provided in the contract between the Davis Company and the construction company that the former should carry all necessary insurance, but no such matter appears in the bond nor can the language of the bond be so stretched as to include the insurance fees."

As to the creditors just mentioned, the Court of Civil Appeals rendered judgment in favor of the surety company.

[1] The General Electric Company has filed no application. Therefore the judgment of the Court of Civil Appeals as to it has become final. Its claim is not before our court for consideration.

[2] On the other hand, counsel for the Maryland Casualty Company did file an application. In that application, it is seriously contended that the bond does cover this item of expense. With this view we agree. The contract, the performance of which the bond guaranteed, expressly required the Davis Company to carry compensation insurance. This expense was one expressly authorized in the contract as one to be incurred in the performance thereof. Since the surety company agreed to pay any expense "incurred in the performance" of the contract, not otherwise expressly provided for, we think the bond does cover this compensation premium. We are at variance with the Court of Civil Appeals in its view that the language of the bond cannot be stretched so as to include these insurance premiums. We are clear that this item of expense is expressly covered by the bond itself. Therefore, we recommend that, as to the Maryland Casualty Company, the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.

The Southern Surety Company was dissatisfied with the judgment of the Court of Civil Appeals, and it filed an application for writ of error, which was granted. This application attacks the awards in favor of several of the interveners, which assignments we will reach in due course. The surety company's application involves that portion of its bond expressly agreeing to pay all sums of money due or to become due "for supplies, teams, equipment, material and labor used, or contracted to be used, in the performance of said contract."

In the case of U. S. F. & G. Co. v. Henderson County, 253 S. W. 835, the Court of Civil Appeals laid down the correct rule governing a bond of this kind, and its judgment was affirmed by the Supreme Court, upon recommendation of our section of the Commission of Appeals. See 276 S. W. 203. In each of the opinions in that case, there was quoted with approval a portion of the opinion of the United States Supreme Court in the case of Brogan v. National Surety Co., 246 U. S. 257,

38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. That quotation is as follows:

"The Circuit Court of Appeals deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond. The bare fact that the supplies were furnished to the contractor and were consumed by workmen in its employ would have been immaterial. A boarding house might be conducted by the contractor (like some company stores concerning which states have legislated Keokee [Consol.] Coke Co. v. Taylor, 234 U. S. 224, 34 S. Ct. 856, 58 L. Ed. 1288) as an independent enterprise, undertaken solely in order to utilize the opportunity for separate and additional profit afforded by the congregation of many laborers in the particular locality where the public work is being performed. The laborers might resort to such a boarding house in the exercise of individual choice in the selection of an eating place. Under such circumstances the furnishing of supplies would clearly be a matter independent of the work provided for in the contract and would not entitle him who had furnished the groceries used in the boarding house to recover on the bond. But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work. The judgment of the Circuit Court of Appeals is therefore reversed and that of the district court affirmed."

The Court of Civil Appeals, in the Henderson County Case, supra, laid down a correct rule of law as follows:

"It would appear from the statements made by the parties to this appeal that the lumber furnished by the Hawn Lumber Company and the Williford Lumber Company became a part of the permanent equipment of the contractors, or was used only incidentally in building the road. There is no showing that it was entirely destroyed nor that it became a part of the permanent structure. For all we know, the contractors may have carried it away, or sold it or applied it to other uses. These appellees rested under the burden of showing that the lumber was material used in the construction of the road; that is, that it was entirely consumed in such work. The showing made does not meet that burden, and therefore the trial court correctly denied them a recovery. This conclusion is fully sustained by the following authorities: Southern Surety Co. v. National Lbr. Co., 73 Ind. App. 592, 122 N. E. 686; City Retail Lbr. Co. v. Title Guaranty & Surety Co., 72 Wash. 300, 130 P. 345; Hess & Skinner v. Turney (Tex. Civ. App.) 207 S. W. 171; Beals v. Fidelity & Deposit Co., 76 App. Div. 526, 78 N. Y. S. 584, affirmed 178 N. Y. 581, 70 N. E. 1095;

K. C., to Use of K. C. Hydraulic Press Brick Co. v. Youmans, 213 Mo. 151, 112 S. W. 225; U. S., Use of Thos. Laughlin Co. v. Morgan (C. C.) 111 F. 474; American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717; Lanham v. Jacoby, 5 Pennewill [Del.] 576, 61 A. 871; United States Rubber Co. v. American Bonding Co., 86 Wash. 180, 149 P. 706, L. R. A. 1915F, 951; Nye-Schneider-Fowler Co. v. Bridges, 98 Neb. 27, 151 N. W. 942; National Surety Co. v. U. S., Use of Pitts. & Buff. Co., 228 F. 577, 143 C. C. A. 99, L. R. A. 1917A, 336; U. S. F. & G. Co. v. California-Arizona Const. Co., 21 Ariz. 172, 186 P. 502; Sherman v. American Surety Co., 178 Cal. 286, 173 P. 161."

[3] Bearing aforesaid principles in mind, it is an easy matter to pass upon the assignments of error in the surety company's application. Of course, the rules of law we have announced are contrary to the view of the Court of Civil Appeals herein. That court holds that the diversion of a part or all of these goods, wares, and merchandise to outsiders or to foreign purposes was immaterial to the rights of these creditors. In other words, that since the articles sold were appropriate for the work of the contractors and the feeding and clothing of their own employees, the bond company is liable to those furnishing such appropriate supplies, regardless of how they were used by the contractor or to whom they were sold. As we have already indicated, that is not the law in our judgment. The bond is definite, and as Justice Brandeis said, in the Brogan Case, supra, the "decisive" question is whether or not the goods furnished "were necessary to and wholly consumed in the prosecution of the work provided for in the contract." Of course, the creditors could recover, in any event, from the Davis Company. But, before they can hold the surety company on its bond, they must show that the supplies went into the prosecution of the work covered in the contract. Otherwise, their recovery would be limited to that portion of the goods, etc., which did go into such work.

Before going into the details of the surety company's application, we quote a material portion of the opinion of the Court of Civil Appeals as follows:

"The following facts were found by the court, which are adopted by this court:

"'The work contracted to be done by defendant B. F. & C. M. Davis Company, Inc., was to be done and performed at a place isolated, and where there were no boarding facilities for the employees of said company while doing such work, and no place in such vicinity where supplies could be had, and that, in order to properly do such work, it was necessary for said company to provide a boarding and lodging house for its employees, and to establish a supply house where its employees could procure supplies and provisions and the things necessary to be used in the prosecution of such work, and that, because of such necessity, said company established and maintained a place to furnish board and lodging to its employees, and a sup-

ply house or commissary to furnish provisions, clothing, materials, and equipment to the men engaged in such work, and that the establishment and maintenance of such board and lodging house and supply house or commissary were necessary for the proper prosecution of such work.

"'B. F. & C. M. Davis Company, Inc., boarded employees of other contractors or subcontractors at such boarding house in addition to their own employees.

"'The goods, wares and merchandise purchased and kept in such supply-house or commissary were all exposed to sale to the general public, except the merchandise purchased from Swift & Company and Armour & Company.

"'None of the interveners had any notice of B. F. & C. M. Davis Company, Inc., boarding other employees than their own.

"'None of interveners had any notice of B. F. & C. M. Davis Company, Inc., offering any of the goods so furnished for sale, and had no notice that any of such goods were used by said B. F. & C. M. Davis Company, other than for the use of their own employees.'

"We approve the other findings of fact made by the trial judge."

[4] It seems that there was no exception taken by either party to the findings of fact by the trial court. So, all are agreed on the facts, and those so found by the trial court must govern. And, as already shown, the Court of Civil Appeals approved those findings of fact anyway.

The fourth assignment of error in the surety company's application reads as follows:

"The Court of Civil Appeals erroneously held plaintiff in error liable for the debts of Armour & Co., Vinnedge & Co., Blair Maupin Co., Nafziger Baking Co., Wichita Falls Produce Co., Bert Bean Coffee Co., and the Goodner Wholesale Grocer Co. The condition of the bond of plaintiff in error being as hereinabove stated and the undisputed evidence and all findings of the court disclosing that items for which all of said indebtedness was incurred consisted of cigars, tobacco, bread, meat, groceries, wearing apparel and similar merchandise, and that said items were all placed in the general stores of the Davis Company and were sold in part to the employees of the Davis Company and were sold otherwise to others and the public generally, and there being no evidence to show what part of said items were appropriated to the use of the employees of the Davis Company and what part was disposed of to others, plaintiff in error would not be responsible therefor."

[5] It is clear that the bonding company is not liable for general commercial enterprises operated by the Davis Company. It would be liable for such portions of these accounts as represented goods sold to the employees of the Davis Company. It was necessary to operate these stores, as held in the Brogan Case, supra, but the bonding company should certainly not be held liable for goods handled by the Davis Company in a general merchandise enterprise open to the public generally.

We think the judgments of both lower courts in favor of the creditors, except Armour & Co., named in the fourth assignment, supra, and against the surety company, should be reversed and such interventions remanded to the district court so these creditors might have an opportunity to show what part of their goods were purchased by the employees of the Davis Company. We so recommend.

[6] We have excepted the claim of Armour & Co. from the others mentioned in this fourth assignment of error. We do this for the reason that the facts alleged in this assignment with reference to Armour & Co. are in direct conflict with the findings of fact of both lower courts. That finding was to the effect that the goods sold by Armour & Co. were not exposed to sale to the general public. Therefore, under this fact finding, to which there was no exception, the claim of Armour & Co. was not rendered invalid on the ground mentioned in this assignment. There is no assignment in the record which says that it is invalid because the products of this company were used in a hotel where guests were entertained other than the employees of the Davis Company. Therefore, that question is not before us. We recommend that the judgments of the lower courts as to the claim of Armour & Co. be affirmed.

The sixth assignment of error, and the proposition thereunder, reads as follows:

"Sixth Assignment of Error.

"The Court of Civil Appeals erred in overruling assignment of error Nos. 11 and 20 in holding that the items furnished by Wolff Bros. and Hamilton Brown Shoe Company and Butler Bros. are chargeable against plaintiff in error under its bond.

"Proposition.

"Miscellaneous merchandise sold to a commercial enterprise and resold at retail to whomsoever comes to patronize may not be charged to the surety on a bond conditioned that the principal would pay for supplies used in the performance of the contract."

This assignment must also be sustained for the same reason stated by us in discussing the fourth assignment of error, and we make the same recommendation as to these three interventions.

[7] The seventh assignment of error, and proposition thereunder, reads as follows:

"Seventh Assignment of Error.

"Said Court of Civil Appeals erred in holding this plaintiff in error liable under its bond for the claims of Moore Richolt Lumber Company, the Continental Supply Company, Hornsby Heavy Hardware Company, the Wichita Hardware Company, Penick Hughes Company, the Bradford Supply Company, and the Bowman Lumber Company.

"Proposition.

"Debts incurred for contractor's general equipment and for parts and repairs to same

are not privileged, and liability therefor does not lie against the surety whose bond is limited to payment for items used and contracted to be used in a particular work."

This assignment must also be sustained. The contractors must furnish their own tools and equipment for doing their work. The only equipment covered by the bond is such as went into the work being done by the contractor. This is well settled in the case of Hess & Skinner Engineering Co. v. Turney, 207 S. W. 171. In that case, a similar bond was under construction, and the Court of Civil Appeals held:

"We are also of the opinion that the court, erred in rendering judgment for Hoppe for $2.50 for a scraper sold by him to the bridge company, and used by them in constructing the bridge; also that it was error to render judgment against appellant in favor of Turney for $12.85 for brushes used in painting the bridge; also that the court erred in rendering judgment against appellant in favor of E. H. Eggleston for $45.50 loaned by him to the contractors to buy wood; and for $4.30 advanced by Eggleston to pay express on some bolts.

"The scraper and paint brushes were tools, and were neither 'labor nor material' used in the construction of the bridge."

This last-cited case went to the Supreme Court and Justice Greenwood wrote the opinion. See 110 Tex. 148, 216 S. W. 621. The latter court made no change in that part of the opinion of the Court of Civil Appeals which we have just quoted.

Therefore, since the statement of facts shows that, at least, much of these claims listed in the seventh assignment of error fall within the condemnation of the rule we have just announced, we recommend that the judgments in favor of these interveners be reversed and their interventions remanded to the district court in order that they may have an opportunity to save such part of their claims as are allowable in spite of the rule just announced. In other words, to show whether a part of their claims were for equipment which went into the structures being erected by the contractor.

[8] The eighth assignment of error, and the proposition thereunder, reads as follows:

"Eighth Assignment of Error.

"The Court of Civil Appeals erroneously held that plaintiff in error was liable to the Pioneer Refiners' Company for oil and gasoline furnished by it, an undisclosed part of same being sold to the public generally.

"Proposition.

"The gasoline and oil furnished by this creditor being sold from auto supply stations to the public generally, plaintiff in error is not liable therefor under its bond, even though a part of same be used in the contractor's operations, the amount not being shown."

This assignment must likewise be sustained to the extent that the judgment in favor of this creditor must be reversed. We have already discussed the rule governing this situation. We recommend that the judgment in favor of this intervener be reversed and his intervention remanded to the district court for another trial.

It is not necessary to pass upon the other assignments in the application. What we have already said will be a sufficient guide to the trial court when the interveners, whose judgments we are recommending should be reversed, come up for trial again. The surety company is liable to them under the rules announced and to that extent only.

[9] The first assignment in the application complains of the action of the trial court in excluding the testimony of J. S. Simpson. He would have testified to the effect that the stores, boarding houses, and auto supply stations were operated as general commercial enterprises. The testimony was clearly admissible and will be very material upon another trial. But, since the trial court made similar findings, so far as applicable to the errors presented in the petition for writ of error, the exclusion of such testimony becomes immaterial here. Such exclusion could not change our recommendation.

There is no tenable complaint in the surety company's application directed to the award in favor of other interveners than those named in the fourth, sixth, seventh, and eighth assignments of error. Therefore the judgments of the lower courts in favor of the interveners not named in said assignments must be affirmed, and we so recommend. But, as to the interveners named in said four assignments of error, except Armour & Co., we recommend that the judgments of both lower courts in their favor be reversed, and their interventions remanded to the district court for another trial not inconsistent herewith. As to Armour & Co., for the reason already stated by us, we recommend that the judgments of the lower courts be affirmed.

This disposes of two of the applications for writ of error on file herein, and fully disposes of all phases of the case in the Supreme Court except as covered by the cross-action for damages filed by the Davis Company against the Callaghan Company. A general demurrer to this cross-action was sustained by the district court and its action was affirmed by the Court of Civil Appeals. The Davis Company claims that this action of the lower courts was erroneous and it has filed an application for writ of error in the Supreme Court setting forth that contention. It was this application which was granted by the Supreme Court. The other two applications were granted because the Davis Company application had been granted. We now come to a consideration of the application filed by the Davis Company.

The application of the Davis Company was

granted upon the tenth assignment of error, reading as follows:

"The Court of Civil Appeals erred in holding that the trial court was correct in sustaining the general demurrer filed by Callaghan Construction Company to the cross-action against it, filed by B. F. & C. M. Davis Company and set forth in the latter's third amended original answer and trial amendment, and in overruling said Davis Company's third and fifth assignments of error relating thereto, because the allegations in said cross-action are legally sufficient to entitle B. F. & C. M. Davis Company to recover from said W. E. Callaghan Construction Company additional compensation for work actually done by it for said construction company in a large sum, to wit, to approximately $150,000, exceeding the amount paid or tendered into court by Callaghan Construction Company, for the following reasons, and each of them, appearing from such allegations."

The allegations just mentioned in aforesaid quotation cover more than eight pages of single-space typewritten matter. It would unduly prolong this opinion to quote such allegations here. They can be found at pages 42–50, inclusive, of the Davis Company's application for writ of error.

Briefly, the nature of the Davis Company contract, as affecting the relations between the parties thereto, may be summarized as follows: Under the subcontract between the Davis Company and the Callaghan Company, the former obligated itself to build several structures as per plans and specifications of the original contract. The subcontract, accepted by the district, expressly provides that the Callaghan Company was not released. The latter company was to have the right to see that the Davis Company executed the contract. It was also expressly provided that the Davis Company was not to have the compensation to which the Callaghan Company was entitled. In other words, the latter company was to have a profit, as shown by the difference in what it was to receive and what it was to pay to the Davis Company for the work. It is quite clear that the subcontract was a triparty affair—the district and both companies being jointly interested therein. It was not a contract between the subcontractor and the district only.

The basis of this cross-action is additional compensation due the subcontractors because of alleged substantial and radical departures from the original contract and specifications by the district and the Callaghan Company. Each of the latter parties required these radical changes, and the Davis Company asks for remuneration accordingly. When these changes were first proposed, and as further demanded in the progress of the work upon structures 1 and 2, the Davis Company complained. But it is alleged that said company proceeded with the work upon assurances that favorable changes, correspondingly lessening the burden, would be made in later structures and that, on the whole, the burden would be equalized. When it became apparent, later, that no favorable changes would be made in any of the structures, but that these radical changes would continue to be made in all of them, adding greatly to the burdens of the Davis Company, the latter company quit work. The Callaghan company desired that the former company continue its operations, so the district and both companies entered into a new joint contract on October 5, 1922, less than one year subsequent to the execution of the original subcontract on December 3, 1921. Under this contract of 1922, satisfactory compensation was arranged for the Davis Company for work thereafter to be done. But the latter expressly reserved its alleged cause of action for this additional compensation in connection with work already done. See page 98 of the Davis Company application. And the other parties expressly reserved their defenses. That is to say, the new contract of 1922 left this claim for additional compensation on work already done in statu quo.

The clause in the original contract which has given rise to the controversy over this additional compensation reads as follows:

"15. Changes. The board of directors reserves the right to make whatever changes in the quantities in the work or materials as may be deemed advisable without notice to the surety or sureties on the bond given to secure the compliance with contract, by adding thereto or deducting therefrom, at the unit price of the contract. These changes may include modifications of the shape and dimensions of the canals, dams and structures of whatever nature, particularly foundations, to suit conditions as disclosed as the work progresses. Should any change be made in any particular piece of work after it has been commenced so that the contractor is put to extra expense, the Engineer shall make reasonable allowance of same, which when approved by the Board will be binding, but such changes shall not diminish or increase the work more than 15 per cent. of the estimated amount."

The original contract contained specifications for the work, maps, and profiles in great detail.

In connection with the quoted clause No. 15 in the original contract, the Davis Company contends:

"That the right, if any, of W. E. Callaghan Construction Company or of the Wichita county water improvement district No. 1 under the terms of the contract above mentioned, to make any changes, additions, modifications, alterations, or substitutions in the structures covered by the subcontract above mentioned, or any of them, did not oblige B. F. & C. M. Davis Company at the original unit price stipulated in said subcontract, to erect said structures according to said new and substituted plans, but the right, if any, to make changes, additions, modifications, alterations or substitutions, and to require B. F. & C. M. Davis Company to erect the structures in accordance with same at the original

unit prices, extends only to such ordinary and reasonable departures from the details in the original plans and specifications, which might become necessary or convenient in order to effectually complete same in substantial conformity with the requirements of the original plans and specifications."

[10] On the other hand, it is contended by the Callaghan Company that the Davis Company agreed to make any changes required without any additional compensation. We do not agree to this latter construction. It is very clear that the original contractors, themselves, did not contemplate any such changes as are here alleged; for the contract provided as shown in clause 15, that these changes must not add more than 15 per cent. to the original plans, and it expressly authorized payment for work required by these changes within that limit. It seems rather apparent that no one had in mind the making of such unusual and radical changes as are here alleged.

But, aside from the effect of this very section authorizing changes, it is the all but universal rule that a general agreement to make changes does not extend to such unusual, far-reaching, or radical changes as are here pleaded. When changes of the latter kind are made, a new contract is the result, and those performing the same are entitled to reasonable compensation therefor. The old contract has been superseded. And it is pleaded here that both the district and the Callaghan Company demanded these radical changes and both are liable therefor to the Davis Company.

In the case of Salt Lake City v. Smith (C. C. A.) 104 F. 457, there was a material deviation and alteration in the plans for the construction of a covered water conduit, the contract for which was a unit price contract. In that contract we find the following stipulation:

"The city shall have the right to make any alterations that may hereafter be determined upon as necessary or desirable."

The contract also contained the familiar provisions, very much like those in the contract in the case at bar, that the engineer shall have power to pass upon differences, make estimates, etc. The court, in this case, held:

"The stipulation that 'the city shall have the right to make any alterations that may hereafter be determined upon as necessary or desirable,' and that the contractors shall be paid for increased quantities at the contract prices, is subject to a like limitation. That provision, not unusual in agreements with cities and other corporations, is limited in its meaning and effect, by reason, and by the object of the contract, to such modifications of the contemplated work, as do not radically change its nature and its cost. Little if any testimony is required to convince the thoughtful mind that the cut stone masonry required to construct a small culvert over a ditch or a creek on a level prairie may be of a character and cost radically different from that necessary to build a stone arch upon sloping banks over a mountain stream, or a stone bridge over a great river like the Mississippi, or a stone building of large dimensions and great height. There was ample testimony in this case to warrant the jury in finding that the masonry required for the dam and the culverts which the plaintiff constructed was not of the same nature or value as that contemplated by the parties when they made the contract. Nor was the evidence made much less persuasive, nor is it more incredible, that the 2,000 cubic yards of concrete masonry which was placed in tunnels of small diameter, into which it was borne on wheelbarrows, and where it was placed by artificial light, was of a very different nature and cost from that placed in open trenches, only deep enough to escape the frost, as contemplated in the bids and the agreement. * * * No such work as this was in the minds of the parties when they made this contract, nor could they have intended to authorize so radical an alteration of the nature of the work as to require it. Since they did not contemplate or intend to contract concerning it when they made their agreement, it was new and different work from that covered by their contract, and the plaintiffs were entitled to recover its reasonable value. Upon this question the court below held upon the trial, and finally charged the jury, in effect, that the city had no right to require the contractors to perform large quantities of work, radically different in its character, nature, and cost from that originally contemplated by the parties when they made their contract, and that, if it had required such work, the plaintiffs were entitled to recover its reasonable value. This was the theory upon which the case was tried, and it was the true theory. It is just to the city, fair to the contractors, and it accords with reason and established law. The dry words and broad stipulations of contracts must be read and interpreted in the light of reason and of the subject contemplated by the parties. The stipulation common to many corporation contracts, that contractors may be required to perform extra work at the price named in the agreement or fixed by an engineer, is limited by the subject-matter of the contract to such proportionally small amounts of extra work as may become necessary to the completion of the undertaking contemplated by the parties when the contract was made; and work which does not fall within this limitation is new and different from that covered by the agreement, and the contractor may recover the reasonable value thereof notwithstanding the contract. The customary provisions in such contracts that the corporation or its engineer may make any necessary or desirable alterations in the work, and that the contractors shall receive the contract price or a price fixed by the engineer for the work or materials required by the alteration, is limited in the same way, by the intention of the parties when the contract was made, to such modifications of the work described in the contract as do not radically change its nature or its cost. Material quantities of work required by such alteration, that are substantially varient in character and cost from that contemplated by the parties when they made their agreement, constitute new and different

work, not governed by the agreement, for which the contractors may recover its reasonable value. Cook Co. [County] v. Harms, 108 Ill. 151, 158, 159. * *. * The stipulation in such contracts that all questions, differences, or controversies which may arise between the corporation and the contractors under or in reference to the agreement and the specifications, or the performance or non-performance of the work to which they relate, shall be referred to the engineer, and his decision thereof shall be final and conclusive upon both parties, does not give the engineer jurisdiction to determine that work which is not done under the contract or specifications, and which is not governed by them, was performed under the agreement and is controlled by it, and his decision to that effect is not conclusive upon the parties. Neither an engineer nor a judge ·who has no jurisdiction of a question can confer jurisdiction of it upon himself by erroneously deciding that he has it."

We shall not quote from any of the other decisions. In the application, pages 80–85, inclusive, many pertinent quotations from the cases are given. We merely cite the following cases as being in line with the aforesaid quotation from the Salt Lake City Case: Cook County v. Harms, 108 Ill. 151; City of Elgin v. Joslyn, 136 Ill. 525, 26 N. E. 1090; Bates & Rogers Construction Co. v. Board of Commissioners (D. C.) 274 F. 662; Henderson Bridge Co. v. McGrath, 134 U. S. 260, 10 S. Ct. 730, 33 L. Ed. 934; Wood v. Fort Wayne, 119 U. S. 312, 7 S. Ct. 219, 30 L. Ed. 416; Casey & Hurley v. McFarlane Brothers Mfg. Co., 83 Conn. 442, 76 A. 515; City of Galveston v. Devlin, 84 Tex. 324, 19 S. W. 395;· Smith v. Bruyere (Tex. Civ. App.) 152 S. W. 813; Hottel v. Reservoir Co., 41 Colo. 370, 92 P. 919; Callahan Construction Co. v. U. S., 47 Ct. Cl. 229; Railway Co. v. Snelling, 59 Tex. 118; Scarbrough v. Wheeler (Tex. Civ. App.) 172 S. W. 196; Venable Construction Co. v. U. S. (C. C.) 114 F. 768; Carroll v. Welch, 26 Tex. 149; Snead & Co. Iron Works v. Merchants' Loan & Trust Co., 225 Ill. 442, 80 N. E. 239, 9 L. R. A. (N. S.) 1007.

We shall not go into this cross-action any further. The Court of Civil Appeals did not discuss this principle of law to which we have just referred. We think it is so clearly correct that there can be no question as to the right of the Davis Company to try its cross-action on its merits. According to its petition, it had been paid only slightly more than one-half of its reasonable charge for its work done prior to the 1922 contract. Under its contract with the Callaghan Company, the latter was to be its paymaster. Of course, the Callaghan Company, upon the completion of the work, had its appropriate cause of action for its full consideration from the district itself.

But one illustration would suffice to show the fallacy of the contention that there is no limit to the changes a party may make against his contractor. Could it be said that

a contract for a frame bungalow could be changed to one of the same size to be constructed of the finest brick? We think not.

In view of what we have said, we recommend that the judgments of the district court and Court of Civil Appeals sustaining a general demurrer to this cross-action, as pleaded, of the Davis Company against the Callaghan Company, be reversed, and that such alleged cause of action be remanded to the district court for a trial upon its merits.

Summarizing our report, we recommend that the various judgments affecting the many parties to this appeal be entered by the Supreme Court herein as we have heretofore recommended.

CURETON, C. J. It is ordered that judgments be entered as recommended by the Commission of Appeals.

We approve the holding of the Commission of. Appeals on the questions discussed in its opinion.